## ADAMS *v.* BELLAIRE STAMPING Co. and others.[1]

### (*Circuit Court, S. D. Ohio, E. D.* June, 1886.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—INVENTION.
    Improvements, although new and useful, are not necessarily or *prima facie* inventions; they may or may not be patentable.
2. SAME—PRESUMPTION OF PATENTABILITY—STATE OF THE ART.
    The state of the art being shown, the jury is not bound by any presumption of patentability arising from the patent.
3. SAME—SCOPE OF PATENT FOR IMPROVEMENT.
    Where the state of the prior art is such that the field of invention is limited and circumscribed, not admitting of great original discovery, a patentee must be confined strictly to the claim he makes.
4. SAME—PATENTABILITY—CHANGE OF LOCATION.
    The mere change of location of the parts of a mechanism, so long as no different or additional function is introduced, is not patentable.
5. SAME—DOUBLE FUNCTION.
    Change of location of parts, whereby one of the parts transposed is made to perform a double function, is not patentable if such part had been before used to perform the same functions separately.
6. SAME—ANTICIPATION—PRIOR PUBLICATION—FUNCTION OF JURY.
    It is for the jury to determine whether prior publications offered in evidence to defeat a patent describe the improvement claimed.
7. SAME—REQUISITES OF PRIOR PUBLICATION TO DEFEAT PATENT.
    A description in prior publications, in order to defeat a patent, must be in such terms as would enable a person skilled in the art to make, construct, or practice the invention as he could from a prior patent, or from the patent sought to be defeated.
8. SAME—SUBSTITUTION OF MECHANICAL DEVICES.
    The substitution for two catches of a hinge and catch, to secure a lantern top to the guard, the several parts being old, required no invention, but simply mechanical skill.
9. SAME—ANTICIPATION—PRIOR PATENT TO SAME INVENTOR—ABANDONMENT.
    A patentee cannot claim the same thing described by him in a prior patent in which there is no reservation, and what he omitted to claim and reserve in such prior patent he dedicates to the public.
10. SAME—IDENTITY OF PATENTS, HOW DETERMINED.
    Whether two patents of different dates, to the same inventor, cover the same thing, must be determined by the scope of the claim in the later patent, rather than by the description in the specification.

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

11. SAME—DAMAGES FOR INFRINGEMENT—LICENSE FEES.

To furnish a measure of damages for infringement of a patent, license fees must be sufficient in number to establish the fee or royalty charged for the use of the patent as its market value, and must also be uniform, and be actually paid or secured before defendant's infringement was committed.

12. SAME—LICENSE FEES FOR SEVERAL PATENTS NOT EVIDENCE OF VALUE OF ONE.

License fees blended for the use of two patents will not establish a royalty as to either separately. The royalty must be for the use of the identical patent in controversy, and for that alone, in order to fix the market value, and render it the established license fee.

At Law.

*J. H. Raymond* and *W. G. Rainey*, for plaintiff.

*George W. Dyer, Lysander Hill*, and *C. H. Grosvenor*, for defendants.

JACKSON, J., (*charging jury.*) Instead of requiring you to render a general verdict in this case, it has been arranged that certain questions of fact shall be submitted to you for your determination, leaving it for the court to pronounce the proper judgment thereon. The questions on which you are to return special findings are the following:

*First.* Does the Irwin patent (No. 50,591) dated October 24, 1865, here in suit, disclose an improvement which required invention, as distinguished from mere mechanical skill or judgment, at the date of said alleged invention? The law of the United States (section 4886, Rev. St.) provides, in substance, that any person having discovered or invented any new or useful art, machine, manufacture, or composition of matter, or any new or useful improvement thereof, not known or used by others in this country, and not patented or described in any printed publication in this or any foreign country before his invention or discovery, may make application to the commissioner of patents, and shall be entitled to a patent therefor. In this case it is only necessary to notice the law as it relates to the subject of an improvement upon a machine. Such an improvement, to constitute an invention within the meaning of the law, must be new, not known or in use before, and it must be useful. In other words, the person claiming the improvement must have found out by himself, and created or constructed, an improvement which had not before been found out or produced by any person, and which is beneficial to the public. There must be novelty in the construction of the improved machine,—novelty created by or originating in the mind of the person claiming to be the inventor. The supreme court of the United States has recently said on this subject that it is not enough that a thing shall be new in the sense that the shape or form in which it is produced shall not have been before known, and that it shall be useful, but that it must, under the constitution and statutes, amount to an invention or discovery on the part of the person claiming the invention; and in May last that same high court declared that where

the mode of construction of the article claimed, the material employed, the form after construction, and the purpose for which it was to be used, had been described separately in earlier patents, although the article itself had never been described in any single patent, and to that extent was novel and new, and was of great utility, it did not require invention to produce it, and it was not, therefore, patentable.

Improvements, although new and useful, are not necessarily or *prima facie* inventions. They may or may not be patentable. The dividing line between improvements which involve invention and those which do not is often difficult, if not impossible, to define with accuracy. Like the colors of the rainbow, it may often be difficult to distinguish the dividing line between them. Still the law makes the distinction; and, in order to enable you to determine the question submitted to you for your consideration, viz., whether the improvement in the Irwin lanterns involved and required the exercise of invention on his part or only mechanical skill, evidence has been introduced as to the character, condition, and progress of the manufacture of lanterns prior and up to the date of his alleged invention. This is called "the state of art" on the subject of lantern manufacture, and is intended to show the exact relation which the Irwin improvement bore to what preceded it. Irwin, and the plaintiff, as his assignee, are chargeable with notice or knowledge of all the facts and information connected with lanterns in use at the date of his improvement. Whether he knew it or not, he is charged, under the law, with the knowledge of everything that was before it; and the patent issued to him in 1865 must be read in the light of this previous state of the art in order to ascertain whether that improvement involves anything so new, useful, and original or distinct as to amount to an invention. If nothing more appeared in evidence than the patent issued to Irwin, and the model of his lantern, the plaintiff would present a *prima facie* case that the improvement is patentable, and that the patentee was the original and first inventor; but, the state of the art being shown, you are not bound by any presumption of patentability in that improvement. You must determine from the evidence whether the improvement in question, or invention, was a novelty created by or originating in the mind of Irwin, or was deduced as a matter of inference, reasoning, or mechanical skill from the then *status* and condition of the lantern manufacture, which he is chargeable with knowing. Was the improvement, under the state of the art, one which might or would reasonably suggest itself to a skilled workman in that particular business? If so, it would not be patentable as an invention. In this connection it is proper for you to consider the evidence of Irwin himself that his improvement was suggested by the prior patent of one Westlake.

In connection with this question, gentlemen of the jury, you must understand in what the alleged patent of Irwin actually consists. Where the prior state of the art is such that the field of invention is

limited and circumscribed, not admitting of great original discovery, the invention of a patentee must be confined strictly to the claim he makes. His claim is the very "soul or life of the patent," as the courts have expressed it. What Irwin claimed as his invention was, "Securing a removable lantern top to the upper part of the guard, substantially as herein specified and described." That is his claim, in his own language; but the description in the previous specification explained simply how this "removable top" is secured, and some of its benefits and advantages. That specification does not enlarge or change his claim, or entitle him to include in his patent anything more than the securing of a removable lantern top in the manner therein described. The plaintiff, Adams, explains, in his deposition in this case, in what this alleged invention consists, as follows, (this is a question and answer:)

"Then, if I understand you, you consider as a distinctive feature of the invention that the lantern top should not be wholly removable from the guard-frame, but that, on the contrary, the fastening on the one side should be permanent, in the nature of a hinge, so as to always keep the parts together, while the fastening on the other side should be a catch, or a like device of some kind, to hold that side of the top down when in use. Is my understanding correct? *Answer.* It is."

And also cross-question No. 33:

"The invention, then, resides in the differences between the cover, or top, fastened by a hinge and catch, or other equivalent, on the one hand, and a cover, or top, removable, fastened by the other common and well-known devices in mechanics,—such as guards, screws, spring-catches, latches, bayonet joints, etc. Am I correct? *Answer.* In my opinion it does."

Now, the scope of claim and alleged invention, as construed by the court, being limited and confined to the securing of a removable lantern top to the upper part of the guard, as described in the specification, the question for you to determine from the evidence is, did this improvement involve the exercise on Irwin's part of anything more than the mechanical skill of a competent workman in that business. If he did nothing more than take a lantern top, such as he could have then found in use, and secure it to the guard of the lantern, as described in the specification, by a hinge and catch, substantially as lantern tops had previously been fastened to the guard, his improvement would not amount to an invention. Whether such removable lantern tops, secured substantially in the same way as described by Irwin in his claim and specification, were previously known or in use, you must determine from the proof, including the patents and exhibits in evidence before you.

You are specially referred to the English Sutherland patent of 1857, and the Morley patent of 1854. Now, if there is a removable lantern top in either of these patents, secured, by a hinge on the guard, with any fastening, you have a right to say that this improvement of Irwin was not an invention. It appears, upon simple inspection,

that the lantern tops of these patents,—Sutherland's and Morley's, —and the mode of securing the same to the guard, differ in some respects from Irwin's arrangement; but the mere change of location of the parts of a mechanism, so long as no different or additional function is performed, does not make the change patentable. Such alteration or modification is not aided by the fact that one of the parts thus transposed performs a double function, if the same device had been before used to perform the same functions separately. The difference in the hinge or catches is not an inventive matter, and is not patentable. While, therefore, it may be true that none of the lanterns referred to are equal to Irwin's in beauty of form or convenience of adaptation to the purpose for which it was intended, yet, if every part has been anticipated and used in some form or other for the very purposes and uses to which it is applied in his claim and patent, he could not be properly regarded as the inventor of the same. Now, under these instructions, and your consideration of the evidence, you must answer that question, and say whether his improvement required the exercise of invention, or was merely the result of reason and mechanical skill in that art.

The next question to which you are asked to respond is this: "Had the invention claimed in the Irwin patent (No. 50,591) dated October 24, 1865, been patented or described in any printed publication prior to Irwin's supposed discovery or invention thereof?" Was it included in any previous publication? The defendant on this branch of the case has introduced the following evidence: He has called attention to the patent of Morley, issued in 1854; the Max Miller, in 1858; the English Sutherland patent, in 1857; and to Irwin's patent, (No. 47,551,) issued on the second day of May, 1865. These patents, with their models, are produced in evidence, and they antedate the Irwin patent in controversy. It is for you to determine whether they substantially cover or embrace his claim or improvement in the present patent. The publication of the Sutherland patent antedates Irwin's patent, as shown by the evidence. That publication, with the specifications of his patent, is before you. It is also in the evidence that a workman in the art of lantern manufacture has, from that specification, actually constructed a Sutherland lantern, which is exhibited for your inspection and examination. Has that a removable top secured to the outer frame so as to open and allow of the removal of the loose globe contained therein? If so, and that is a part of the description of that English patent, it is substantially what is claimed in the Irwin patent.

A description in prior publications, in order to defeat a patent, must be in such terms as would enable a person skilled in the art to make, construct, or practice the invention as he could from a prior patent or from the patent itself. It is for you to determine whether that description is such as enabled him to construct that lantern, and whether it has a top formed in the manner indicated. If it does, it

anticipated his (Irwin's) patent, because it was published in 1857, and his claims to the invention only dates back to the fall of 1864.

If the jury find from the evidence that the plaintiff's lantern has been anticipated in everything else except the hinge; if they find from the evidence the construction of his lantern in every part of it pertaining to the invention in controversy, except that the prior lantern used two catches for securing the removable top to the upper part of the guard, (but which hinge and catch had been used in other lanterns for securing a removable top to the upper part of the guard, and was well known,)—then the substitution of the old hinge and catch for the two old catches required no invention, but involved simply mechanical skill, which is not patentable, and they must find for the defendants.    Look, also, at these other models introduced in evidence, —the Morley, the Max Miller, and the Waterman,—and see whether, they secured or suggested a removable lantern top, fastened by a hinge on the one side and some sort of a catch on the other.    If they did, they anticipated Irwin's patent.    But, gentlemen, the inventor may also anticipate himself.    Irwin may, in this case, have anticipated himself.    He took a patent (No. 47,551) on the second of May, 1865, which is in evidence before you, with its claim and specification, which you must consider in determining whether the improvement described therein is substantially the same thing as in the patent in controversy, notwithstanding the difference in the location of the point on the frame or guard where the hinge is located.    Now, having taken that patent of the second of May, 1865, if it substantially covers or suggests the patent taken in the fall of 1865,—the one in controversy here,—these two patents could not stand.    One must fall.    One is void, and it is the last.    If there is identity in the mode of operation or mechanical structure, with no substantial difference, and Irwin takes out two patents, although the last may have been first invented, yet, after the date of that invention, if he takes out a patent that substantially anticipates it, the first patent taken out is the valid one, and the second one is void.    These two patents if they are substantially the same in the matter of the location of the hinge, must be considered the same if they perform the same function.    If the top, either breaking in the middle or near the top of the globe, performs the same functions in the two patents, then they would be substantially the same, and the first taken out is the valid patent, and the second would be void.

A patentee cannot claim the same thing described by him in a prior patent in which there is no reservation, and what he omitted to claim and reserve in a prior patent in which the invention was described he dedicates to the public.    If Irwin, in 1865, in his first patent, failed to properly claim this thing, and did not reserve it, he dedicated it to the public, and he could not subsequently take out a new patent, in the fall of 1865, if it covered substantially the same thing, and the later patent would be void.    Whether the two patents cover

the same thing must be determined by the scope of the claim in the later patent, rather than by the description in the specification. So, he may have anticipated himself as well as have been anticipated by previous patents and prior publications. You must answer that question, therefore, in the light of these instructions and these patents, and say whether he was anticipated by a previous patent, including his own issue of May, 1865, or by any other publication.

The next question is: "Was Irwin the first discoverer of any part of this invention which was patentable?" That is covered by the preceding instruction.

The next question is: "Have the defendants infringed the plaintiff's patent (No. 50,591) dated October 24, 1865?" If this patent of the plaintiff can be claimed to be a new invention, it must be for a combination of devices which amount to a new lantern; in which case you must find that the defendants have duplicated that, for you cannot, in view of the state of the art, consider equivalents in patents for mere improvements. It must be the same device, and the same invention. It must be substantially a duplicate of the patented invention. But that, gentlemen, is a question for you to determine.

The last question submitted is this: "Does the evidence show and establish a license fee or royalty for the use of the plaintiff's patent No. 50,591, now in suit? If so, during what period, and at what rate?" The burden of proof is on the plaintiff to prove such an established license fee or royalty to your satisfaction. The sale of a single license, such as that made by Irwin to Adams in 1866, is not sufficient to establish a royalty or uniform license fee. Were the licenses granted by the plaintiff since the twenty-seventh day of October, 1879, under the patents No. 47,551, dated May 2, 1865, and No. 50,551, October 25, 1865, taken by the licensees in order to get protection of both of said patents in the manufacture of hinged-top lanterns? Consider these licenses, and say what they contain. To be binding on a stranger or infringer, sales of licenses must be sufficient in number to establish the fee or royalty charged for the use of the patent as its market value. You, as farmers or business men, would not think of taking the price of a horse in 1866 and fixing that as the price in 1879. You would not be warranted in saying that in 1866 the price was the same as in 1879. These license fees must be sufficient in number to establish the fee or royalty charged, and must also be uniform, and be actually paid or secured, before defendant's infringement was committed. The license fee, or royalty, must relate exclusively to the patent claimed to be infringed. It must relate to patent No. 50,591 before you can find it to be established at all. License fees for the use of that and another patent blended together would not establish a royalty as to either patent. The royalty must be for the use of the identical patent in controversy, and for that alone, in order to fix the market value, and render it the established license fee. If, therefore, it appears from the proof in the

case that the licenses produced in evidence by the plaintiff embrace or include another patent than the one sued on, or that other inducements and agreements than the use of this particular patent formed in whole or in part the consideration which actually or probably influenced the licensees to pay the royalty therein stipulated, then such license fees would not constitute an established royalty in the particular patent No. 50,591, because it could not be assumed or inferred that the license fee agreed to be paid related alone to the use of that one patent, when the contract upon its face disclosed other considerations and inducements for the payment of that royalty. The burden is on the plaintiff to show you exactly what was paid as a royalty for that patent, and in a sufficient number of instances to establish the market value. Under such circumstances license fees cannot be regarded as an established royalty for the use of that particular patent in controversy, and, in the absence of other satisfactory evidence as to how the parties to this contract divided and apportioned that fee between this patent No. 50,591 and the other consideration mentioned and recited in the licenses, it will be your duty to return as your answer to this question that there was no established license fee or royalty on the patent No. 50,591.

Take the case, gentlemen of the jury, and return your answers to these questions. There is evidence which you are not to consider in determining your findings and your responses to these interrogatories. One is the evidence relating to the Duburn application, which was made sometime in 1865,—April, 1865,—which cuts no figure in this case, and which, therefore, you will not consider. Then, there is the patent of Baron, which also cuts no figure in this case, and which is therefore out of the way.