GRANT PAPER BOX CO. v. RUSSELL BOX CO.

No. 4044.

Circuit Court of Appeals. First Circuit.

April 17, 1946.

730

For former opinion, see 151 F.2d 886.

Hector M. Holmes, of Boston, Mass. (Edgar H. Kent, of Boston, Mass., and William H. Parmelee, Eiffel B. Gale, and Christy, Parmelee & Strickland, all of Pittsburgh, Pa., of counsel), for appellant.

George P. Dike, Herbert A. Baker, and Roderick W. Hoag, all of Boston, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

WOODBURY, Circuit Judge.

After our opinion in this case was handed down the plaintiff-appellant petitioned for rehearing on the principal ground that we had erred in holding claim 3 of the Dreymann patent invalid for lack of invention on the authority of Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 65 S. Ct. 1143. We invited written arguments on the petition and after considering them granted it. Now, the point having been briefed and argued, we think it well made.

The patentee in the Sinclair case, Gessler, did not discover what characteristics a solvent for a printing ink ought to have to make the ink slow drying at ordinary temperatures but fast drying at elevated temperatures. That discovery was made before Gessler by one Hanson who published an article on the subject. But Hanson was unable to find any solvent having the peculiar quality of being relatively non-volatile at ordinary room temperature but highly volatile at a temperature of 150° C., a temperature to which paper can safely be heated without burning, which he said was essential if the problem he posed was to be solved. Gessler's only contribution was that he found the solvent which met Hanson's specifications. But he found it in a known compound listed both by name and by its vapor pressures, that is, its rates of evaporation at various temperatures, in the catalogue of a dealer in chemicals, and this, the Supreme Court said, did not constitute invention.

Dreymann, on the other hand, did not merely play Gessler to some prior worker's Hanson.[1] He combined the roles of both Hanson and Gessler in that he not only discovered the essential characteristics which a laminating agent for paper ought to have to accomplish the purpose he had in mind, but he also found the agent. To be sure, that agent was, we think the evidence satisfactorily discloses, a commercially available compound having known characteristics. Nevertheless the value of those characteristics for bonding paper to produce a flexible and at the same time a moisture-vapor proof material thin enough for small folding boxes and cartons and which could be written and printed upon was unknown before Dreymann, and therein lies the distinction between the case at bar and the Sinclair case.

In spite of this, however, the defendant-appellee contends that the patent in suit is invalid on the authority of Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683, for the reason that Dreymann only substituted one known material for another to produce possibly a superior, but not a new product. We do not agree because it seems to us that the case at bar is governed by Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 494, 23 L.Ed. 952, in which the Hotchkiss case is distinguished.

Dr. Cummings, the patentee in the Goodyear case, obtained a patent for the use of hard rubber or vulcanite, at that time a recently discovered compound but one of known characteristics, as a plate or base for artificial sets of teeth. Various metals had been used for this purpose before and false teeth were old, but nevertheless the Supreme Court held Cummings' patent valid for the reason that he had done more than simply to use "hard rubber to perform the functions that had been performed by other materials, such as gold, silver, tin, platinum or gutta-percha." It said that the result of Cummings' teachings was a new product "differing from all that had preceded it, not merely in degree of usefulness and excellence, but differing in kind, having new uses and properties."

■ We think the same may be said of Dreymann. To be sure he used a known

---

[1] The defendant-appellee argues that prior patents in the art did for Dreymann what Hanson did for Gessler. However, considering those patents, we cannot see that any of the patentees therein directed their attention to Dreymann's problem or suggested his solution of it.

compound having known characteristics, (amorphous petroleum wax carrying a suspended colloid) in combination with another known material (a kind of paper known as boxboard) to produce an old article of manufacture (laminated paper), but he used the wax to perform functions never performed before by bonding agents for paper. He used his agent not merely to produce a water-proof paper; he used it to produce a thin flexible moisture-vapor proof boxboard which could be written or printed upon and which could be folded to make small boxes or cartons without losing its highly desirable moisture-vapor proof characteristic. Furthermore Dreymann's product like that of Dr. Cummings enjoyed commercial success on the basis of merit. Under these circumstances we think as much may be said for Dreymann as the Supreme Court said for Cummings, and in consequence we now conclude that claim 3 of Dreymann's patent is valid.

This raises the question of infringement.

As already appears Dreymann, in order to obtain the adhesive he desired, added a resinous colloidal substance foreign to petroleum to a relatively pure amorphous petroleum wax, whereas the defendant found a similar adhesive in amorphous petroleum wax carrying a colloidal impurity native to petroleum. Thus the question of infringement hinges upon the interpretation of Dreymann's patent. If he taught only the addition of some foreign colloid to relatively pure amorphous petroleum wax, as the defendant contends, the defendant does not infringe for the reason that it adds nothing foreign to petroleum to the amorphous wax it uses.[2] If, on the other hand, the plaintiff's patent covers amorphous petroleum wax carrying a suspended colloid, regardless of the source of the colloid, as a bonding agent for paper for the purposes specified, then upon the finding made below to the effect that both the plaintiff's and the defendant's waxes have approximately the same colloidal content, infringement is indicated.

The claim in suit reads broadly. It claims a container wall of the type described "including a sheet or film composed substantially of an amorphous petroleum wax * * * carrying a suspended colloid." This language obviously does not limit the patentee to amorphous petroleum wax to which a foreign colloid has been added. This the defendant concedes. But it argues that the claim must be interpreted in the light of the specification, that so interpreted the claim is limited to the addition of foreign colloidal matter, and hence that the defendant cannot be said to infringe by using a wax carrying native colloidal matter.

We concede that the specification teaches the addition of a colloid foreign to petroleum. But a patentee is not necessarily limited to illustrative specifications. He is required by the statute to disclose the best method he knows of practicing his invention, but it is well established that if his claim be broad enough, he is not confined to that method but may claim infringement if another uses the principle and appropriates the substance of his invention. B. B. Chemical Co. v. Ellis, 1 Cir., 117 F.2d 829, 833, and cases cited.

That is what the defendant wittingly or unwittingly did, and it makes no difference that the presence of the resinous colloidal material in its wax was fortuitous. General Bakelite Co. v. Nikolas, D.C., 225 F. 539, 555; Toledo Rex Spray Co. v. California Spray Chemical Co., 6 Cir., 30 F.2d 495, 497; Donner v. Sheer Pharmacal Corp., 8 Cir., 64 F.2d 217, 223. The defendant's amorphous petroleum wax carrying a suspended colloid performs the same function in combination with boxboard as the plaintiff's, and it performs that function in the same manner to produce the same result. Thus the waxes clearly are equivalents in begetting the new product and infringement follows. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147.

The judgment of this court dated November 7, 1945, is vacated, the judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs in both courts to the appellant.

[2] It appears that the defendant's wax is a blend of two commercially available waxes but this is unimportant because it appears that no substance foreign to petroleum was added at any stage in the refining or the blending of its wax.