## RUSSELL BOX CO. v. GRANT PAPER BOX CO.

### No. 4689.

United States Court of Appeals
First Circuit.

March 31, 1953.

Arthur D. Thomson, Boston, Mass. (Herbert A. Baker, Boston, Mass., on the brief), for appellant.

William R. Hulbert, Boston, Mass. (Hector M. Holmes, Boston, Mass., and William H. Parmelee, Pittsburgh, Pa., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is another phase of the protracted litigation between these parties over the validity and infringement of claim 3 of Dreymann's patent No. 2,031,036 for a moisture-vapor proof container wall for the packaging of material which consists. essentially of two sheets of paper bonded together by a sheet or film of amorphous petroleum wax of an apparent melting point of 120–170 degrees F., carrying a suspended colloid.

The principal bone of contention between the parties from the beginning has been the scope of the claim. The plaintiff, Grant,* has consistently maintained that the claim covers the use as a laminating agent for paper of amorphous, or what is the same thing, micro-crystalline, petroleum wax carrying a suspended colloid, regardless of whether the colloidal matter suspended in the wax was added as a foreign substance to pure, or relatively pure, wax of the kind described, or whether the colloidal matter was present in the wax in a substantial quantity as a native impurity. The defendant, Russell, on the other hand, has equally consistently maintained that Dreymann's claim 3, properly construed, is narrower in that it covers only the use of amorphous petroleum wax for the purpose described to which some colloidal material foreign to petroleum has been added.

The District Court, after trial on the merits of the issues of validity and infringement, found that Russell had used an amorphous petroleum wax known to the trade as "Benowax C," which had a colloidal content of about 25%, as a laminating agent for paper. But it found that the colloidal material suspended in Russell's wax had not been added as a foreign substance, but was present therein as an impurity native to petroleum, and that Grant was estopped by the file wrapper from claiming infringement by the use of such a wax. It therefore entered judgment for the defendant without passing up-

* The roles of the parties as appellant and appellee having changed in the course of this litigation, we shall for clarity hereinafter refer to Grant Paper Box Company as the plaintiff, or Grant, and to Russell Box Company as the defendant, or Russell.

on the validity of claim 3. On appeal by Grant from this judgment we differed with the District Court. After full consideration we rejected Russell's file wrapper estoppel argument, which rested upon Dreymann's abandoned claim 9, and concluded that there was nothing in the file wrapper to prevent Grant from claiming infringement by the use as a laminant for paper of amorphous petroleum wax carrying in suspension a substantial amount of colloidal matter, even though that colloidal matter was naturally present in the wax. Nevertheless, we affirmed the District Court's judgment of dismissal because we thought claim 3 was invalid for lack of invention under the rule of Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644, which had been decided about six months before. See our opinion of November 7, 1945, 1 Cir., 151 F.2d 886.

Grant thereupon petitioned for rehearing. We granted the petition; briefs were filed and arguments presented as a result of which we were persuaded that the rule of the Sinclair & Carroll Co. case did not apply. Then we concluded that Dreymann's claim 3 was broad enough to cover amorphous petroleum wax carrying native colloidal matter in suspension, that it was valid as so construed, and hence that it had been infringed. Thus, on April 17, 1946, we handed down an opinion on rehearing in accordance with which we vacated our former judgment, reversed the judgment of the District Court which we had previously affirmed, and remanded the case to that Court for further proceedings not inconsistent with our opinion. 1 Cir., 154 F.2d 729. Russell applied to the Supreme Court of the United States for certiorari, but that Court denied the writ on October 14, 1946, 329 U.S. 741, 67 S.Ct. 79, 91 L.Ed. 639, and four days later, on October 18, our mandate went down to the District Court.

Approximately five months later (March 11, 1947) Russell filed a motion with us asking for leave to file a motion in the District Court to vacate judgment, or, in the alternative, for leave to file a petition in this court for rehearing. A file wrapper estoppel argument was advanced by Russell in support of this motion, but not one grounded on abandoned claim 9. Instead, it rested its argument on the proposition, which it said that it had not advanced before, that Dreymann in the original specification which he filed in the patent office when he first applied for his patent had expressly excluded and disclaimed as any part of his invention the use of amorphous petroleum wax to which nothing foreign to petroleum had been added, and that once having done this, he could not by subsequently amending his specification, as he did, expand the scope of the monopoly of his patent to cover the use of a wax to which nothing foreign to petroleum had been added. Russell also contended that Dreymann's amendment to his specification described a new and different invention from the original one described in his application, and so required the support of a supplemental oath of invention. We denied this motion without opinion on April 14, 1947.

Then on July 26, 1948 Russell filed the following motion in the District Court which it entitled "Motion to limit decree after mandate and injunction":

"Now comes the defendant in the above entitled cause and moves that the Decree after Mandate and any injunction pursuant thereto be limited to permit the use, manufacture and sale of container walls in which the laminating wax is a composition similar to that of waxes sold in 1934 as 'wax' to distinguish from other crystalline waxes sold as 'paraffin', being amorphous waxes, having melting points from 120 degrees to 170 degrees F., on the ground that the patentee in his original application for patent disclaimed and disavowed the use of such waxes as his invention, and therefore, that the claims of his patent in suit should not be construed to cover as laminating agents the waxes which he expressly said were not adequate as adhesives."

The District Court denied this motion on October 20, 1948, and on the same day entered an interlocutory decree on our

mandate vacating its former judgment; adjudging the Dreymann patent in suit good and valid in law as to its claim 3, that Grant was the owner thereof and that Russell had infringed; enjoining Russell from further acts of infringement; and referring the case to a master for determination of Russell's profits and an assessment of Grant's damages. Russell took an appeal from the interlocutory decree, but on November 23, 1948, after hearing counsel, we affirmed without opinion on a motion filed by Grant under our Rule 26(3). The case then proceeded to hearing before the master.

■ The July 1948 motion quoted above is not altogether clear on its face. But Russell says in its brief on this appeal that the motion "was based upon the disclaimer contained in Dreymann's original application and the broadening amendment to that disclaimer," and then it refers us to the same statement in the specification Dreymann originally filed, and the amendment thereof, upon which it relied in support of its motion of March 11, 1947. Now, however, Russell does not emphasize file wrapper estoppel, but principally urges that the amendment worked such a material change in the patent that it required a concurrent supplementary oath of invention.

We are deeply impressed with counsel's persistence, ingenuity and subtlety, but not enough to permit retrial of the issue of the scope of Dreymann's claim 3 at this late stage of this protracted litigation. At any rate, evidently the same argument now strenuously urged was presented to the Court of Appeals for the Third Circuit in Sutherland Paper Co. v. Grant Paper Box Co. and Carl G. Dreymann, 3 Cir., 1950, 183 F.2d 926 at page 932, and that Court, referring to our previous opinions in this litigation cited above, disposed of the argument as follows:

"The difficulty with plaintiff's second objection, that changes were made in the application without a concurrent filing of a supplemental oath, is that plaintiff has failed to establish the importance of these changes. If we are correct in the construction we have given Dreymann's patent, then a change from a statement that petrolatum waxes were not adequate for the purposes of the patent to a statement that they were not always adequate has no material bearing on the substance of the disclosure. Moreover, this change seems to have been made because of the cancellation of a claim originally included in the application. When the description as originally filed is read in conjunction with this claim, it becomes clear that the challenged change was necessitated by an obvious discrepancy between the specification and the claim."

We are entirely satisfied with this disposition of the argument, and if we were to consider it on its merits, we would have nothing further to say in its refutation.

We turn now to the master's report and the action taken thereon by the District Court.

After hearings extending over a substantial period of time the master filed his report on May 29, 1952. He found that there had been no attempt to prove the defendant's profits from its infringement, and that the accounting period for the plaintiff's damages ran from February 18, 1936, when the Dreymann patent issued, to December 31, 1943, when Russell sold its infringing business to Container Corporation. His first recommendation was that damages be assessed on the basis of an established royalty of $3 for each ton of usable paper board laminated by the defendant with a minimum yearly payment of $500 for 1936 and $1,000 for each year of the accounting period thereafter. But, he said, if the court should not agree with this recommendation, then he recommended an award in identical amounts but on the basis of a reasonable royalty—the difference between the awards being that in the case of an established royalty interest runs from the respective dates when royalty payments would have been made had the defendant taken a license such as those the plaintiff had granted to others, whereas in the case of a reasonable royalty, interest runs, in the absence of special circumstances, only from the time the dam-

ages are judicially ascertained and liquidated. Then, after carefully and thoroughly analysing and tabulating the oral and documentary evidence before him with respect to the amount of usable paper board laminated by Russell during the accounting period, he recommended the assessment of damages in the amount of $35,509.71, with interest thereon at 6% compounded annually in the amount of $31,711.92, if the court should assess damages on the basis of an established royalty, provided final judgment were entered before January 20, 1953.

In addition to the foregoing the master found that although the defendant believed that it was not infringing, its "belief was due to carelessness in ascertaining the facts, carelessness in construing claim 3 or a combination of the two and that it was not due to any misleading statement by the plaintiff." He also found that the defendant had failed to preserve its records, for which it offered no excuse; and that in addition it had not only been dilatory in complying with an order of the master to produce a sworn statement of account prepared by its officer best advised in the premises, but also, when it eventually did produce an unverified statement prepared by a person not well qualified to do so, the statement was "inaccurate, incomplete and poorly arranged." However, the master did not recommend an increase of damages or the award of attorney's fees based on these findings because in his opinion "these matters are solely within the discretion of the District Court."

Both parties filed objections to the master's report, and the court below, after hearing counsel on briefs and orally, on July 17, 1952 entered an order modifying the master's report and adopting the same as modified. On the same day it entered the judgment for the plaintiff from which the present appeal is taken wherein it awarded damages in the sum of $170,259.75 and counsel fees of $30,000, and in addition gave the plaintiff its costs and disbursements in the action to be thereafter taxed on notice and inserted by the Clerk of Court.

The District Court for the purpose of arriving at the amount of its judgment for damages divided the accounting period into three parts: the first running from February 18, 1936, when the patent issued, to January 1, 1939; the second running from January 1, 1939 to July 1, 1940; and the third running from July 1, 1940 to the end of the accounting period, December 31, 1943. It found that Grant had issued no licenses during the first part of the accounting period, and hence that damages for that part of the period should be calculated on the basis of a reasonable royalty. And it found that during that time Grant was in competition with Russell, and had been paying the inventor, Dreymann, a royalty of $8.30 per ton with a minimum yearly payment of $5,000. Wherefore it found that damages for the first part of the period should be calculated on the basis of Grant's payments to Dreymann, that is, $8.30 per ton of usable paper board laminated by Russell with a minimum annual payment of $5,000.

The court found that although Grant had issued licenses during the second part of the accounting period, those licenses were "so specialized in character as not to constitute an 'established royalty.'" Nevertheless, it found that the royalties fixed in those licenses, $5 per ton of usable paper board with a minimum annual payment of $5,000, was reasonable and should be used in calculating recoverable damages for this part of the period.

As to the third part of the period, the court found that licenses issued by Grant fixed an established royalty of $3.00 for each ton of usable paper board laminated by Russell and a minimum annual payment of $1,000, to which compound interest should be added. It also found that although damages were not assessed for the first two parts of the accounting period on the basis of an established royalty, nevertheless special circumstances existed which warranted computing interest on the awards for those parts of the accounting period also. "Among those special circumstances," the court said, "are the facts that during the first period defendant was in competition with plaintiff (who, of

course, was required to pay his $8.30 royalty promptly to the inventor) and during the second period defendant was in competition with plaintiff and two licensees who had to pay their royalties on a current basis without discount for prompt payment."

Then the court below in its memorandum opinion continued as follows:

"After the damages and interest have been calculated in accordance with the formulae above set forth, the Court directs that a decree shall be entered for one and one half times the amount of the actual damages and interest so calculated together with what in every type of case are called 'the costs' (not including counsel fees). The reasons why the Court increases the damages by 50% are not only the carelessness of the defendant already referred to but also the failure of the defendant to preserve its records and to cooperate to the usual extent in disclosing steps taken before and since the trial of this case began. These reasons also contribute to my determination to allow, in addition to the enhanced damages and costs already referred to, $30,000 for counsel fees. The itemization upon which this allowance is made is in part disclosed by the docket entries in this Court and the Court of Appeals and the Supreme Court of the United States. The allowance takes into account the capacity and diligence of counsel, their professional reputation, the difficulty of the tasks presented to them, and the manner in which they have performed the professional services they have undertaken."

Russell as the appellant herein does not contend that any mathematical errors were made in applying the formulae laid down by the District Court for assessing damages to the facts with respect to the amount of its production of laminated paper board as found by the master and adopted by the court below. Russell's contentions on this appeal have to do primarily with the District Court's formulae, and secondarily with various findings of fact made by the master and adopted by the court below and other findings made by that court alone on the record.

█ It complains of the formula adopted for assessing damages for the first part of the accounting period on the ground that Grant's payments to Dreymann pursuant to their contract do not provide a proper basis for establishing the amount of a reasonable royalty. Perhaps theoretically something may be said for Russell's position. Nevertheless, the payments made by Grant to Dreymann are certainly not irrelevant, and using them as the basis for fixing a reasonable royalty serves to equalize the competitive position of the parties during the first part of the period of infringement. Moreover, there is evidence in the record, which was not disputed, that the prevailing royalty in the industry for boxes was 5%, and the master found that the defendant admitted an average gross sales price of $166 per ton for its paper board, so that application of the established royalty rate for boxes to the price of the board gives a royalty of $8.30 per ton for the board. Since finished boxes obviously must sell for more per ton than the board from which they are made because of manufacturing costs, the award of $8.30 per ton of board is not only justified, but is also definitely to the defendant's advantage. The $5,000 minimum annual payment was derived from the fact that the first licenses negotiated by Grant carried that minimum figure, and so it cannot be said to be unreasonable. We see no valid reason to disturb the royalty fixed by the court for the first part of the accounting period.

█ Russell also contends that the court below was not justified in assessing damages on the basis of a reasonable royalty of $5 per ton for the second part of the accounting period. We do not agree. During this part of the period Grant issued two licenses at a rate of $5 per ton of board with $5,000 per year minimum. These licenses, the District Court said, did not provide a basis for finding an established royalty, but we see no reason why that court could not use them as the basis for fixing a reasonable royalty. Indeed, we think the court was fully justified in refusing to put:

Russell as an infringer in a more favorable position than Grant's licensees during this part of the accounting period.

Russell makes no objection specifically directed to the damages assessed for the third part of the period of accounting. Its remaining contentions are of general application.

■ First and foremost in emphasis is the contention that justification is lacking for an increase of actual damages by 50% and an award of counsel fees. Again we do not agree.

As already indicated, the master found that although Russell believed that it was not infringing, its belief "was due to carelessness in ascertaining the facts, carelessness in construing claim 3 or a combination of the two." And the District Court in its memorandum opinion said that it "heartily" concurred in this statement. Moreover, there is ample evidence to support the master's finding specifically adopted by the court below that the defendant had failed to preserve its records and had failed to cooperate as it should at the trial of the issue of damages. These findings cannot successfully be attacked as lacking support in the evidence, and they are clearly adequate to support an increase of the actual damages proved by 50% and an award of counsel fees. We would certainly be loath to disturb a conclusion of the District Court in a matter so peculiarly within its competence as an increase in damages and an award of counsel fees in cases of this sort, and viewing this litigation as a whole, we have no disposition to do so here. Indeed, we feel the increase in the damages and the award of counsel fees are wholly justified.

■ Russell further contends that the royalties charged by Grant in the licenses which it issued to other manufacturers should not have been used without reduction in amount as the basis for determining either an established or a reasonable royalty because the licenses covered the use of Grant's trade-mark "Tredonia" and 2 process patents as well as Dreymann's product patent in suit. It is true that the licenses did confer the right to use the trade-

mark and the process patents in addition to Dreymann's product patent, but the master found and the court below agreed that the right to use the trade-mark and the process patents had only nominal value. There is ample evidence to support this finding, and from this it clearly follows that no apportionment is required or in fact is even possible.

■ Another contention advanced by Russell is that the accounting period for damages should have been limited to the period starting on July 1, 1940, for the reason that there is no evidence that before that time Russell was using an amorphous petroleum wax containing a substantial amount of resinous colloidal matter. This contention rests upon the evidence adduced at the original trial in 1944 that although Russell throughout the entire period had used Benowax C, which it procured from Bennett, Incorporated, a dealer in waxes, the Benowax C first supplied was an unblended wax produced by Conewango Refining Company, whereas beginning early in 1940 Bennett, Incorporated without notifying Russell began to supply the latter with a blended wax carrying the same trade name, but produced by Quaker State Oil Company. There is no evidence that the unblended wax first sold as Benowax C differed in colloidal content from the blended wax later sold under the same name. The matter was never greatly emphasized, but such evidence as there is points to the conclusion that the waxes were substantially identical in all respects including colloidal content. Apparently their practical identity has been pretty much taken for granted since the first trial. But however this may be, Russell raises this contention now for the first time, and it comes into the case too late. It should have been raised at a stage when evidence could have been taken to determine whether or not it had any substance, or at least presented to the District Court by appropriate objection to the master's report. As it is, the contention is an obvious afterthought of counsel advanced too late for the production of evidentiary support or refutation. We have already given it all, and perhaps more

attention than it deserves and we shall consider it no further.

The judgment of the District Court is affirmed, with the addition of a fee of $2,-500 to counsel for the plaintiff-appellee for services on this appeal.