BANDAG, INC., Plaintiff-Appellee,

v.

GERRARD TIRE COMPANY, INC., Defendant-Appellant.

Appeal No. 83–538.

United States Court of Appeals, Federal Circuit.

April 18, 1983.

George T. Mobille, Washington, D.C., argued for plaintiff-appellee. With him on the brief were J. Samuel Gorham, III, Rocky Mount, N.C., and Robert W. Adams, Hickory, N.C.

John F. Ray, Charlotte, N.C., argued for defendant-appellant. With him on the brief was Charles T. Myers, Charlotte, N.C.

Before RICH, DAVIS and NIES, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the unpublished October 15, 1982, decision of the United States District Court for the Western District of North Carolina, holding appellee Bandag, Inc. (Bandag) entitled to recover from appellant Gerrard Tire Co. (Gerrard)[1] $71,-087.80 in damages and $19,962.19 in accrued interest. That determination followed the February 10, 1982, decision of the Fourth Circuit Court of Appeals affirming the district court's August 3, 1981, judgment that Bandag's U.S. Patent No. 3,236,709, issued February 22, 1966, for a "Tire Recapping Process," was valid and infringed by Gerrard. We reverse and remand.

1. Hereinafter "Gerrard" is used to refer both to the company and to its president, Jerry Ger-

*Background*

On August 6, 1980, Bandag brought a civil action in the U.S. District Court for the Western District of North Carolina seeking injunctive and compensatory relief for patent and trademark infringement and unfair competition. Gerrard counterclaimed and filed a third party complaint against certain others for alleged violations of section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. On October 31, 1980, the court entered a preliminary injunction restraining Gerrard from infringement of Bandag's patent and trademarks.

The court entered judgment against Gerrard on August 3, 1981, whereby it was permanently enjoined from infringement of claims 1–7 of the patent, and from "further infringement of the BANDAG trademark and service mark, or any mark deceptively or confusingly similar thereto as well as against further acts of unfair competition." This judgment was affirmed on February 10, 1982, by the United States Court of Appeals for the Fourth Circuit.

On October 6, 1982, a separate trial was held to determine damages. Bandag presented no evidence to support its claim of damages for trademark and service mark infringement, and its counsel advised the court that such claim was waived.

*District Court Opinion*

The court began by noting that, at the first trial, it had entered the following findings of fact:

   ... Defendant Gerrard admitted at trial and in his deposition taken May 6, 1981 that his company used the Bandag method in its operation and set forth the number of tires retreaded in an average day. This infringement began about September 1976 and continued until this Court entered the preliminary restraining order dated October 31, 1980. Gerrard estimat-

rard, the context indicating which is meant.

ed that maybe one-half to three quarters of the tires retreaded during this period used the Bandag method, and that from September 1976 until about the end of 1979 Gerrard was retreading at least one hundred (100) tires per week and that from about the end of 1979 to the 31st day of October [1980] one hundred eighty (180) tires per week.

The average tire retreaded by Gerrard requires about twenty two (22) pounds of tread rubber and cushion gum for retreading operations infringing [Bandag's] Patent. Under the franchises granted since 1970, Bandag receives a *royalty and service fee* of twenty cents (20 cents) per pound of tread rubber and cushion gum used in the Bandag method. [Emphasis ours.]

Noting that appellant's records indicated that, during the time in question, it used 465,373 pounds of tread rubber and 67,786 pounds of cushion gum in its retreading operation, and that "a reasonable approximation of the amount of such infringement [based on Gerrard's "maybe one-half to three quarters" admission] is two-thirds (⅔) of the time," the court applied appellee's "established royalty rate of 20 cents per pound" to the amount of tread rubber and cushion gum used and determined that appellant was entitled to damages in the sum of $71,087.80.

The court also stated that "where a patentee has granted *licenses* and has an established royalty, the total royalty with interest from the date on which it was payable is the proper measure of the patentee's recovery." [Emphasis ours.] On that basis, it held appellee entitled to interest in the sum of $19,962.19, and a total recovery of $91,-049.99.

The court declined to adopt Gerrard's argument that the damages should be limited because of Bandag's failure to mark products of the patented process pursuant to 35 U.S.C. § 287, holding that the notice requirements of that statute refer only to "articles" and do not apply "where the patent is directed to a process or method."

*Arguments on Appeal*

Gerrard argues, first, that the finding of the district court that a royalty based on the use of cushion gum and tread rubber would be the best measure of damages was clearly erroneous, because "If a reasonable royalty is to be used as the basis for awarding damages, it should be based on the product of the invention and not on incidental products such as tread rubber and cushion gum which could be used in many methods." Gerrard also asserts that the finding that 20 cents per pound constituted an established royalty was also clearly erroneous, as it was based on a royalty *and service* fee taken from a single franchise agreement, with no allocation between the royalty and service fees. Gerrard emphasizes that, through that franchise agreement, "Bandag agrees to furnish managment [sic] training, sales training, training in the Bandag system, a merchandising program, an audit program, field clinic training programs, advertising, a personnel management program and a sales development program."

Additionally, Gerrard argues that the finding of the court that it used two-thirds of its purchases of tread rubber and cushion gum in infringing Bandag's patent was clearly erroneous. It states that the "admission" relied upon was merely a guess: when Gerrard was asked in deposition how many tires were retreaded using the Bandag method, he concluded, "I don't know." The following exchange then took place:

Question: "Well, would it be the majority of—" Sorry. "Well, it would be the majority of those tires, wouldn't it?"

Answer: "Not necessarily, maybe half of them, maybe three-quarters of them, I don't know, because, you know, Harrellson, Bandag, and all that's all the same thing when you get down to the nitty-gritty of it, you know, it's all the same thing."

Gerrard notes that while "Bandag had the opportunity to examine the records and other employees of Gerrard, it failed to do so."

In addition to repeating the 35 U.S.C. § 287 "marking" argument it made before

the district court, appellant contends that the judgment of the court that appellee was entitled to $19,962.19 in interest was clearly erroneous. Because there was no proof of an established royalty, appellant maintains, any interest on damages must run only from the date of a judgment establishing the amount of a reasonable royalty.

Bandag counters that Gerrard's admission constituted a "finding" by the district court which

> * * * was affirmed on appeal and is now uncontrovertible. The trial court also entered a finding at the first trial that, since as early as 1970, Bandag's franchise agreements calculated royalty due on the basis of the poundage of tread rubber and cushion gum used in the Bandag method. This too was a finding affirmed by the Appellate Court and stands uncontroverted.

Bandag also argues that the poundage method is "proper since it is in accordance with Bandag's established procedure for calculating royalties under [its] *franchise agreements*," and the "Courts have repeatedly held that patent royalties may be based on a convenient measure of the possible value of a patent *license*." [Emphasis ours.] Likewise, Bandag contends,

> * * * the use of the "two-thirds" figure is reasonable since it lies halfway between Gerrard's estimated lower and upper limits. As the United States Supreme Court noted in *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 [66 S.Ct. 574, 580, 90 L.Ed. 652] (1946), where the available evidence necessitates calculation of damages by the trial court based upon reasonable approximation, such

awards have been upheld since "the wrongdoer shall bear the risk of uncertainties which his own wrong has created."

It is also argued by Bandag that the 20-cent figure is appropriate, and "To the extent that such calculations may have exceeded a 'reasonable royalty' the trial court acted properly under the statute since this figure was merely the minimum that could be awarded by the court."

Bandag meets the arguments of Gerrard respecting 35 U.S.C. § 287, and asserts that the application of interest prior to the entry of judgment was in accordance with the law.

Gerrard did not file a reply brief.

## OPINION

35 U.S.C. § 287 prescribes that, on penalty of having their damages limited to times subsequent to actual notice, patentees and their agents shall mark any "patented *article*," thereby giving notice "to the public that the same is patented." (Emphasis ours.) In addition to the clear language of the statute, it is, as noted by the district court, also settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method. *E.g., Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.*, 297 U.S. 387, 56 S.Ct. 528, 80 L.Ed. 736 (1936). Accordingly, we affirm the court's holding that damages should not be limited to the infringement that occurred after Gerrard was notified by Bandag of its claim.[2]

Further, we agree with Bandag that it was not clear error for the district

---

2. Gerrard suggested review of *Miller v. Daybrook-Ottawa Corp.*, 291 F.Supp. 896, 158 USPQ 635 (N.D.Ohio 1968) and *Mathey v. United Shoe Machinery Corp.*, 54 F.Supp. 694, 61 USPQ 79 (D.Mass.1944), wherein, it is asserted, the courts "discussed the Wine case and decided that it was limited to the facts of the Wine case and does not stand for the proposition decided by the trial Court in the case *sub judice*." These cases, and others cited by Gerrard, all involved product claims, and the statement

of Gerrard with respect to discussion of the *Wine* opinion in the above cited cases is incorrect.

Nevertheless, in addition to its marking argument, Gerrard asserts that damages should be limited to the period after notice because Bandag long had knowledge of Gerrard's operations and had led Gerrard to believe at various times from 1974–1980 that it would be given a franchise. These facts do not give rise to considerations of laches or estoppel, however, for they

court to select the poundage of tread rubber and cushion gum used in the infringing process as a royalty base. It had found in its earlier opinion that "Under the franchises granted since 1970, Bandag receives a royalty and service fee of twenty cents (20¢) per pound of tread rubber and cushion gum used in the Bandag method." We also find no error in the determination of the district court, based on Gerrard's admission that his company used Bandag's patented process to recap "maybe half of [its tires], maybe three quarters of them," that a reasonable approximation of the amount of infringement is two-thirds of the time.

We do, however, hold that the court's use of the *franchise* agreement's 20-cent per pound "royalty and service fee" to calculate damages was erroneous as a matter of law.

■ It was long ago resolved that a license fee represents the proper measure of damages only where the defendant's infringing acts are commensurate with those acts contemplated under the license for which the fee has been established. 3 W.C. Robinson, *The Law of Patents* § 1058 (1890). Robinson points out that, with respect to an established license fee, the evidence must disclose "that the defendant's acts of infringement have been such as in quality and extent were contemplated by the license to which the fee has been attached." *Id.* § 1059, at 333.

■ Conversely, it must also be acknowledged that a particular fee is not the correct measure of damages unless that which is provided by the patentee to its licensees for that fee is commensurate with that which the defendant has appropriated.

■ In other words, the true measure of a patentee's general damages must be the

value of what was taken. *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.,* 235 U.S. 641, 648, 35 S.Ct. 221, 224, 59 L.Ed. 398 (1915); *Faulkner v. Gibbs,* 199 F.2d 635, 638, 95 USPQ 400, 402 (9th Cir.1952). For example, a fee to be used in measuring damages to be paid for infringement of one patent cannot also encompass payments for permission to practice other patented inventions. *E.g., Vulcanite Paving Co. v. American Artificial Stone Pavement Co.,* 36 F. 378, 379 (E.D.Pa.1888). *See also Saulnier v. United States,* 314 F.2d 950, 951, 161 Ct.Cl. 223, 224, 137 USPQ 222, 223 (Ct.Cl.1963) ("A patentee, of course, is only entitled to recover for the value of his invention, not for non-infringing improvements therein."); *Porter Needle Co. v. National Needle Co.,* 22 F. 829 (D.Mass.1885) ("The license fee being paid for the use of the whole machine, it should have been proved that the particular patent embraced all the mechanism of value in the machine. If the patent covers only a part of the mechanism, then it should appear what portion of the license fee was paid for its use, and what portion for the use of other inventions embodied in the machine.").

In this case, the only agreements referenced are *franchises,* not patent licenses, and given that the "royalty and service" fee obviously entitled the franchisee to considerably more than a license under Bandag's patent, we cannot say that that fee—to use an analogy—represents "such a market price for the article that it may be assumed to express, with reference to all similar articles, their salable value."[3] *Rude v. Westcott,* 130 U.S. 152, 165, 9 S.Ct. 463, 468, 32 L.Ed. 888 (1889). Utilization of the franchise "royalty and service fee" as proof of

---

do not establish that Bandag had knowledge of Gerrard's infringement. Indeed, the facts show that an attorney notified Gerrard of Bandag's claim of infringement on May 18, 1980, and the trial judge found that Bandag did not receive evidence that Gerrard was infringing until "early 1980." Gerrard fails to point to any evidence which makes this finding clearly erroneous.

3. The "BANDAG SYSTEM FRANCHISE AGREEMENT" reproduced in Gerrard's appendix, for the 20¢ fee discussed above, provides the franchisee with (1) the right to practice, with respect to the retreading of all tires 1400–24 and smaller except commercial aircraft, in a particular geographical area, the "Bandag Method," which method is allegedly covered, "by way of example," by several U.S. patents,

an "established royalty" contravenes the sensible precept that "The royalty must be for the use of the identical [patented invention] in controversy, and for that alone, in order to fix the market value, and render it the established license fee." *Adams v. Bellaire Stamping Co.*, 28 F. 360, 366 (S.D.Ohio 1886). *Cf. Russell Box Co. v. Grant Paper Box Co.*, 203 F.2d 177, 183, 97 USPQ 19, 23 (1st Cir.), *cert. denied,* 346 U.S. 821, 74 S.Ct. 37, 98 L.Ed. 347, *reh'g denied,* 346 U.S. 905, 74 S.Ct. 216, 98 L.Ed. 404 (1953) ("It is true that the licenses did confer the right to use the trade mark and the process patents in addition to Dreymann's product patent, but the master found and the court below agreed that the right to use the trade mark and the process patents had only nominal value. There is ample evidence to support this finding, and from this it clearly follows that no apportionment is required or in fact even possible.").

We express no opinion as to whether the 20¢ figure may represent a reasonable patent royalty; that has not been proved. Nor do we express any opinion respecting the appropriateness of any sum the district court may, on remand, assess as damages (general or special). Those damages may amount to less, the same, or more than the sum awarded by the judgment now under review. As set forth in 35 U.S.C. § 284, Bandag is entitled to "damages adequate to compensate for the infringement"—which the district court may determine in any suitable way, such as by ordering or undertaking an accounting—and a reasonable royalty, when it can be determined, and which may be equivalent to an established royalty, is merely the floor below which damages shall not fall.

■ We now hold only that utilization of the 20¢ fee to calculate damages was erroneous as a matter of law because Bandag, which attempted to prove no more, did not show that figure to be an "established" royalty, exacted only for permission to practice the process claimed in the patent in suit.

The decision of the district court awarding damages based upon calculations using, without apportionment, the 20¢ franchise "royalty and service" fee as a royalty rate is *reversed* and the case is *remanded* for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

including that which is the subject of this dispute; (2) the use of Bandag's "extensive detailed technical know-how pertaining to retreading tires through the practice of the Bandag Method" (which franchisee agrees to "keep secret"); (3) the use of the trademark and trade name Bandag, and Bandag's logos; and, (4) the following services and materials: Franchisee Management Manual; Bandag System Instruction Manual; Bandag Sales Training Guide; Bandag System Training Program; Bandag Merchandising Program, including the new dealer opening package; Bandag Field Service and Audit Program; Bandag Franchisee Advertising Co-op Programs; Bandag Field Clinic Training Programs; Bandag Personnel Management Programs; and Bandag Sales Development Program.