## The LAITRAM CORPORATION

v.

## HEWLETT–PACKARD COMPANY, INC.

### No. 91–4023.

United States District Court, E.D. Louisiana.

Oct. 15, 1992.

See also 806 F.Supp. 1286.

Steven W. Usdin, Phillip A. Wittmann, Dane S. Ciolino, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., Barry Louis LaCour, Laitram Corp., Harahan, La., Timothy J. Malloy, Lawrence M. Jarvis, McAndrews, Held & Malloy, Chicago, Ill., for plaintiff.

Alexander Hall Plache, Stewart Earl Niles, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., S. Leslie Misrock, Jonathan A. Marshall, Brian D. Coggio, Stephen J. Harbulak, Edmond R. Bannon, Pennie & Edmonds, New York City, for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

The defendant, Hewlett–Packard, moves for partial summary judgment on the grounds that Laitram failed to comply with 35 U.S.C. § 287 and is barred from recovering any damages for the alleged infringement of United States patent No. 4,860,234 for the period prior to the filing of the Complaint. The motion is DENIED.

## BACKGROUND

The facts of this case have been recited in detail in this Court's Order and Reasons denying the defendant's motion for summary judgment on the noninfringement of U.S. Patent No. 4,547,860 and do not need repeating here. 806 F.Supp. 1286.

The product that is targeted in this motion was a demonstration software package created by Laitram to market its ideas to Hewlett–Packard about increasing the functional power of the keyboard keys on its calculators while maintaining or reducing the total number of keys. This software package included a software program to reprogram the keyboard of the HP 41 calculator through the use of an ROM (read only memory) which would plug into the calculator. An additional keyboard overlay was included to show the user which functions the ROM software assigned to a particular key and in what sequence the keys were to be pushed. As previously stated, this demonstration device was designated the "XQ2."

While only several XQ2 demonstration devices were assembled for demonstration purposes, Laitram had ordered approximately 500 ROMs from Hewlett–Packard. In October of 1985, EduCALC, a company which sells many HP calculators, purchased a number of the XQ2 conversion kits (the ROM and keyboard overlay). These kits were sold under the name of "XQ2 Keyboard and Programming System." While Laitram suggested a retail price, the kits were sold outright and at no time did Laitram receive any monies beyond the initial sales to EduCALC. There were two such sales over the course of a year and a half, comprising a total of between 70 and 100 kits. The final shipment to EduCALC occurred in May 1987.

The patent at issue in this motion and which the defendant alleges covers the XQ2 conversion kits was issued in August

of 1989. After this patent issued, Edu-CALC believes that it may have sold 6 to 8 more kits but is certain that two of those kits were sold to Stephen Harbulak, an attorney for the defendant. At no time were the conversion kits marked with a patent number. Laitram claims HP has infringed this device too, although the facts of infringement are not as clearly stated as those involving the '860.

## I.

The defendant contends that the XQ2 conversion kits sold to EduCALC by the plaintiff between October 1985 and May 1987 were covered by the '234 patent that issued in August of 1989. Since these conversion kits were not marked and the defendant was not notified of any patent infringement until the filing of the complaint, the plaintiff has, the defendant argues, violated 35 U.S.C. § 287 and should be denied damages prior to the filing of the complaint. The defendant's arguments, however, are flawed.

## A.

■ Under § 287(a), entitled "Limitation on Damages and Other Remedies; Marking and Notice," a patentee is barred from recovery of damages if he has not marked his own patented product with its patent number:

> Patentees, and persons making or selling any patented article for or under them may give notice to the public that the same is patented ... In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which even damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

This provision applies by its terms, however, only to "patentees, and persons making or selling any patented article for or under them." The purpose of this provision is to give patentees the proper incentive to mark their products and thus place the world on notice of the existence of the patent. *See Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir.1983) ("35 U.S.C. § 287 prescribes that on penalty of having their damages limited ... patentees and their agents shall mark any 'patented article' thereby giving notice 'to the public'"). To benefit from the § 287 limitation, then, the defendant must show that either the patentee or his agent sold a patented article without marking the article with a patent stamp or, in the absence of that stamp, without notifying the infringer that an infringement has occurred. 35 U.S.C. § 287.

■ To prevail on this motion, then, Hewlett–Packard must prove first that the XQ2 conversion kits were a "patented article" within the meaning of the law. If successful, HP must prove that the kits were sold either by Laitram or an agent or licensee of Laitram without being properly marked. Finally, it must be shown that at no time prior to the filing of this complaint was HP notified that an infringement of the '234 patent had occurred.

It is undisputed that the XQ2 conversion kits at issue in this case were not marked as required by § 287. Moreover, there is also no dispute that the defendant was not notified of infringement prior to the filing of the complaint. However, the defendant has failed to prove that the XQ2 conversion kits were "patented articles" within the meaning of § 287.

■ Whether an article is covered by a particular patent is a question that must be proven; it cannot be assumed by this Court. It seems the best proof is to ask if the article were sold by someone other than the patentee, would it directly and literally infringe the independent claims of the patent.[1] Under this approach, this Court uses the two step infringement analysis: first, the scope of the claims must be ascertained and then the trier must decide whether the claims cover the accused device. *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 974 (Fed.Cir. 1985). The second step of this test is a fact question. *Id.*

---

1. The plaintiff suggests a similar approach in its Memorandum in Opposition.

The defendant falls far short of carrying its burden of proof that the XQ2 conversion kits were covered by the '234 patent. The only evidence that the defendant offers in support of coverage is that of the president of EduCALC, Mr. Jim Carter. He compared the XQ2 overlay with the drawings from both the '860 patent and '234 patents and testified in deposition that Figure 1 of the '234 patent is a rough sketch of the XQ2 keyboard overlay. From this conclusory testimony the defendant draws the conclusion that "there can be no doubt that Laitram should have marked the XQ2 product with the number of the '234 patent." That seems weak at best. The defendant has not met its burden of proving that the XQ2 conversion kits are patented articles within § 287.

Having failed to prove there is no material dispute as to whether the XQ2 conversion kits are "patented articles" under § 287, the defendant's motion for summary judgment is denied.