C. S. JOHNSON COMPANY, a Corporation, Appellant,

v.

Merle W. STROMBERG, Doing Business as California Batching Equipment Co., Appellee.

No. 15249.

United States Court of Appeals Ninth Circuit.

March 29, 1957.

Rehearing Denied May 8, 1957.

Richard L. Gausewitz, Santa Ana, Cal., and William A. Denny, Milwaukee, Wis., for appellant.

Lyon & Lyon, R. Douglas Lyon, Los Angeles, Cal., for appellee.

Before STEPHENS, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is a suit for infringement of United States Letters Patent No. 2,138,172, for a concrete Batching Apparatus invented by plaintiff's assignors. The patent issued November 29, 1938, expired November 29, 1955. (The filing date was February 10, 1937.) Suit was instituted August 25, 1954. By the time trial was had, the prayer for injunctive relief was moot.

The invention may be succinctly described as a combination patent, whereby a cement hopper is centrally located within an aggregate (sand and rock) hopper, each hopper being independently supported so that their contents can be separately weighed, with the respective hopper discharge gates being so concentrically located that the cement is discharged simultaneously (or nearly so) with the aggregate, by gravity, through the center of the "flowing shaft of aggregate," while water is supplied to the aggregate by a tubular stream sur-

rounding the aggregate. The simultaneous fall causes a certain amount of "commingling," prior to the batch reaching the pre-mix truck or mixer. If no water is added, a dry batch is, to a certain extent, "commingled."

By such a procedure, various advantages are claimed: (1) a reduction in the amount of cement lost through "dusting;" (2) the reduction of "balling" and "gumming" by preventing the cement from hitting the mixer sides or mixer blades before the aggregate does; (3) a speeding up of the final and necessary "pre-mixing," or "mixing;" (4) a pre-shrinking of the size of the total of ingredients prior to transportation to the job site; and (5) some reduction of batching plant size and height, with resultant cost of construction saving.

By stipulation [Tr. 29, 151], the trial proceeded only as to claims 1 and 5 of the patent. As appellant says:

"Claim 1,[1] shown in plaintiff's Exhibit 15, is a broad claim which covers * * * all the accused plants. * * *" "Claim 5,[2] shown in plaintiff's Exhibit 17, is a much more specific claim which covers * * *" but two plants.

"From the above it will be understood that Claim 1 must be held valid and infringed if plaintiff is to be given substantial relief. The upholding of Claim 5, although also much desired by plaintiff, will result in greatly diminished relief since Claim 5 covers two plants only."

Claims 1 and 5 were held invalid by the trial court, solely on the ground of an alleged prior public use at a batching plant constructed and operated by strangers to the present action at 235 Alabama Street, San Francisco, California. [Findings of Fact and Conclusions of Law, Tr. pp. 78–84]

It is obvious from a reading of the Transcript that the defendant discovered at the last minute the prior use relied upon at the trial. Counsel for defendant at the conclusion of the direct testimony of plaintiff's first witness, on March 13, 1956, (a Tuesday) advised the court and opposing counsel that on the preceding day, Monday, he had received for the first time drawings of an alleged prior use; and that his client, the defendant, had heard about such prior use "the middle of last week," [Tr. 157] and defense counsel learned of it "last Thursday or Friday, Friday afternoon." (March 9th, 1956.) [Tr. 160]

While the defendant's answer had raised a claimed lack of invention in plaintiff's patent, and a sale in this country "more than two years prior to the date of the application for the patent in suit," the pretrial memoranda filed by counsel for defendant on March 7, 1956, did not mention the specific prior use introduced and primarily relied upon, at the trial.

It should be noted here that the plaintiff had filed its pretrial memorandum on July 20, 1955. It had urged and insisted on trial as soon as possible. Defendant, (whether through fault or otherwise) had caused and apparently welcomed de-

---

1. Claim 1. "In a batching apparatus of the class described, in combination, a main hopper to receive aggregate material, an auxiliary hopper disposed within the main hopper, weighing mechanisms one for each hopper, and means for connecting the hoppers with the weighing mechanism therefor so that each hopper may move independently relatively to the other and the materials contained therein."

2. Claim 5. "In a batching apparatus of the class described, a main hopper to receive coarser aggregate material, an auxiliary hopper to receive cement disposed so as to discharge the cement onto and into the coarser aggregate material, discharge means for each of said hoppers, the same being concentrically disposed and serving to produce commingling of the cement and coarser aggregate, means whereby the quantity of the cement in the cement hopper and the quantity of coarser aggregates in the main hopper therefor may be accurately measured independently, means for discharging each of said hoppers to effect the commingling action referred to as the aggregate pass from the hoppers flowing in a shaft-like stream while the hoppers are discharging, and instrumentalities to supply water to the flowing shaft of aggregates in a tubular stream surrounding said aggregates and flowing into same at an angle thereto."

lay, and had substituted new defense counsel at a late date, after the first counsel for the defendant had requested that he be substituted out. New defense counsel filed a motion to continue the trial which was denied. Due to congested court calendars, there was delay before trial of the action could be reached.

Plaintiff urges this Court to reverse the lower court's findings and judgment because:

"*Point I.* The trial court erred in finding the evidence on the apparatus at 235 Alabama Street, San Francisco, California, to be such, as a matter of law, as to invalidate claims 1 and 5 of Johnson patent No. 2,138,172.

"*Point II.* The trial court abused its discretion by admitting evidence relative to the Alabama Street plant despite failure by defendant to comply with 35 U.S.C. 282.

"*Point III.* The documentary evidence relative to the Alabama Street plant is hearsay, and was not properly admitted under 28 U.S.C. 1732 (a)." [Appellant's Open. Brief, pp. ii, iii.],

and further urges Point IV, that the defendant's infringement is clear, and therefore, Point V, there is no necessity of a remand.

Because we cannot agree with appellant's first three points, and hence affirm the lower court, we need not deal with Points IV and V. We will discuss the first three points in turn.

"*Point I.* The trial court erred in finding the evidence on the apparatus at 235 Alabama Street, San Francisco, California, to be such, as a matter of law, as to invalidate claims 1 and 5 of Johnson patent No. 2,138,172."

Here the trial court, (if we assume the evidence of prior use was properly before it) had the testimony of three witnesses to rely on: Murasko, Cornett, and Bodinson, together with many written Exhibits. Certainly the individuals gave testimony, which, if believed by the trier of fact, was sufficient to justify the finding of prior use here questioned.[3]

A careful review of the entire record leaves no doubt in our minds but that a certain batching plant existed on Alabama Street in San Francisco as early as 1931, and perhaps 1930. There were many details given by the witnesses above named, (such as jobs supplied with concrete mix from this plant, giving names and locations, and the years supplied). It is true that the existence of "a batching plant" in 1931 or 1932 does not prove the existence of a plant similar to plaintiff's claimed invention, nor one which demonstrated a prior use of the patented art. But this preliminary deficiency was amply made up through the detailed and knowledgable testimony of Murasko. He testified he was present when the batching machinery was installed and helped install it. He operated it from 1931 until the last day of May, 1942. He had been in charge of a somewhat similarly constructed batching plant at another (Geneva Avenue) address, and came to the Alabama Street

3. "The burden of proof imposed upon a party tendering the issue of prior public use is a heavy one. It is not satisfied by a mere preponderance of the evidence, but is borne successfully only if the evidence is clear and satisfactory—perhaps beyond a reasonable doubt. It is not the rule, however, that oral evidence is insufficient as a matter of law in all cases; nor does the rule require the trial court to discard credible testimony merely because it is oral and because it deals with events and circumstances long past. If the evidence as to prior public use is such that it would be accepted as satisfactory and convincing in any other kind of case, criminal or civil, then the degree of proof fixed by law to establish such use is attained. Radio Corp. of America v. Radio Engineering Laboratories, 293 U.S. 1, 7, 55 S.Ct. 928, 931, 79 L.Ed. 163; Paraffine Companies, Inc., v. McEverlast, Inc., 9 Cir., 84 F.2d 335, 339, 341; Rown v. Brake Testing Equipment Corp., 9 Cir., 38 F.2d 220, 224; International Carbonic Engineering Co. v. Natural Carbonic Products, Inc., D.C. Cal., 57 F.Supp. 248, 258, affirmed, 9 Cir., 158 F.2d 285; Becker v. Electric Service Supplies Co., 7 Cir., 98 F.2d 366." Whiteman v. Mathews, 9 Cir., 216 F.2d 712, at page 716.

plant when the wooden frame had been built, before any hoppers or scales had been added. He described the hoppers in detail, and knew who made them. He described the separate scales, and knew who manufactured them, and what company had installed them. The cement hopper was located "dead center" above the aggregate discharge. No cement could reach the truck or stationary mixer unless and until the aggregate discharge was also opened.

Murasko had seen the same general type of construction at the "Geneva Avenue and Tara Street plant" of the Bode Ready-Mix Concrete Company in 1930. (There the cement hopper had been within the aggregate hopper, but off to one side, not directly above the aggregate discharge opening.)

Cornett had worked under Murasko at the same plant from 1933 or 1934 to 1942, and was in charge of that same plant himself from 1942 to 1945. His sole job was to operate the plant; he gave ample evidence under cross-examination that he had done so, and was completely familiar with the manner in which it was constructed and, more particularly, operated.

The witness Bodinson, President of the company (since 1940) that built the Alabama Street plant in 1931, first saw the plant erected, when during his high school days, he had worked on Saturdays and vacations. This he had done continuously from 1928 or 1929 on. He later worked full time until 1940, when he succeeded his father as president. He had first visited the plant on a Saturday in the fall of 1931.

Mr. Bodinson identified drawings taken from his company's files, which were customarily kept therein. He described how these records were consecutively lettered and numbered, and how filed. Defendant's Exhibit A, for example, was identified as a drawing "made in our company December 4, 1931 by Mr. Pete Hansen, his initials are P. H. and his signature (sic) I recognize." The same system was followed by this company in keeping records after Mr. Bodinson went with his father's company as before, except that drawings are now microfilmed for added protection. Mr. Bodinson actually saw a drawing of the Alabama plant while it was in the course of being constructed, although he frankly admitted he was too young, and had no reason, to study it, or advise anyone concerning it.

Bodinson was a mechanical engineer, registered as such by the State of California, and could read and prepare engineering drawings and blueprints. He identified drawings of the slide gates on the cement hopper, (Defendant's Exhibit F); of the bottom of the storage bins, (Defendant's Exhibit G); of the cement weigh hopper and rotary feeder, (Defendant's Exhibit H); of the independently hung cement hopper within the aggregate hopper, (Defendant's Exhibit I); of the feeder drive and cement scales, (Defendant's Exhibit J). All these related to the alleged prior use; and were purportedly prepared just prior to the time the Alabama Street plant was to be built. Some were dated 1931.

Next the witness identified Defendant's Exhibit K as the "shop order," made by Bodinson Manufacturing Company, dated August 3, 1931, covering the building for the Kaiser Paving Company of the Bode Gravel Company plant at 16th and Alabama Streets in San Francisco, to which location the machinery was shipped. Said the witness:

"It details, spells out in detail, every bolt, nut, drawing number, bearing, hopper, general description of everything that goes into the construction of that particular order." [Tr. 566.]

This shop order likewise came from the company's files.

Defendant's Exhibit L, was the shop order for drawing L–2488, which was Defendant's Exhibit A in evidence, of the cement hopper. Other shop orders (Defendant's Exhibits M, N, O and P) covering other portions of the Alabama Street plant were also introduced, and all again, from the company's files.

This written contemporaneous evidence, if properly before the court, sub-

stantiated not only the oral testimony as to the existence of the prior plant, but also the prior use of the art claimed in plaintiff's invention.

■ Our duty is not to weigh the evidence, nor to pass on the credibility of witnesses.[4] We cannot disturb the trial court's findings on this issue, in view of the above record.

■ *"Point II.* The trial court abused its discretion by admitting evidence relative to the Alabama Street plant despite failure by defendant to comply with 35 U.S.C. 282."

35 U.S.C. § 282 reads as follows:

"In actions involving the validity or infringement of a patent the party asserting invalidity or non-infringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Claims, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires."

Counsel for plaintiff would have us deny to the trial court the discretion specifically given it by the last sentence of said statute.

That we cannot do. It is obvious that the purpose of the thirty day notice rule is to prevent surprise at the trial; to enable both sides to better understand their adversaries' case; and to cut down on "expensive delays," or to prevent "a loss of a cause." (Philadelphia & T. R. Co. v. Stimpson, 1840, 14 Pet. 448, at page 459, 39 U.S. 448, at page 459, 10 L. Ed. 535. The very purpose of the exception, as cast by Congress, was to permit and aid the ascertainment of the truth "on such terms as the court requires." This is true, even though we assume a defendant or his counsel were dilatory or neglectful in their defense of patent litigation (a matter upon which we do not here pass judgment).

The notice provision in the statute is salutary. It should be encouraged, but the rule requiring it has its exceptions. The determination when the exception should be ruled rests within the discretion of the trial judge.

Here the trial judge postponed the trial from Friday, March 16th, 1956, to April 23rd, 1956, at 2:00 P.M., a period of thirty-eight days. Plaintiff's counsel had requested "a few days." [Tr. 598] The continuance granted was more than plaintiff had requested.

The Court said:

"How about April 23rd? That will give you nearly a month (sic). That will give you time to investigate."

"Mr. Sellers: I don't have my calendar, but as far as I know, that is all right." [Tr. 599]

When court convened on April 23rd, 1956, no further time was requested by plaintiff.[5] He could have recalled de-

4. Georgia Kaolin Co. v. Thiele Kaolin Co., 5 Cir., 228 F.2d 267; Cutter Laboratories v. Lyophile-Cryochem Corp., 9 Cir., 179 F.2d 80; Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 151 F.2d 91; Central California Canneries Co. v. Dunkley Co., 9 Cir., 247 F. 790.

5. "Mr. Lyon: Ready, your Honor.
"Mr. Sellers: Ready.
"The Court: On this Stromberg matter, I continued it until this afternoon in

order to give the plaintiff an opportunity to make an investigation in San Francisco to determine whether or not the plant as described at the trial had been established when the witnesses said it was established and whether it did the things the witnesses said it did. I am perfectly willing to hear you at this time.
"Mr. Sellers: May it please the court, the plant dates back to 1931, your Honor will remember, it is so alleged, and it is

798

fendant's witnesses for cross-examination, but he chose not to do so. He could have called his own witnesses, but he did not do that, either.

The trial court went far to see that his discretion was exercised in a fair and judicial manner. He enabled plaintiff's counsel to make all the investigations he apparently desired to make. We think clearly the court's action was a proper exercise of the court's discretion.

Nor are we impressed with plaintiff's argument that because the pleadings which the judge had studied before the trial disclosed issues (i.e., injunctive relief) which the delay in reaching a trial date eliminated from the case, is any proof of an abuse of the trial court's discretion. Counsel for plaintiff states (p. 21, Opening Brief) the trial court also indicated its belief that it would be unjust "at this late date" [Tr. 501] to award damages on a patent if it were invalid.

"From the above it will be understood that the Trial Judge believed there was *more reason for admitting the evidence and holding the patent invalid after its expiration than before * * *.*"

the testimony of one of the defendant's witnesses that the plant was disintegrating in 1947 and the plant was scrapped. We were unable to find that was not a correct statement. As of this time there is no plant so far as we can ascertain that can be checked to see what was in it.

"The Court: Well, I am satisfied, as I said before, there is some evidence in the Water Department or in the Power & Light Department as to when service first was given in this plant.

"Mr. Sellers: If I may say so, your Honor, that would only establish that there was a plant there.

"The Court: That's right.

"Mr. Sellers: We are not particularly concerned with whether or not there was a plant there, but whether or not there was a plant there which anticipated the patent here in suit, and whatever might be in the Water Department or in the way of issued licenses would not establish that point.

"The Court: What are we going to do with the testimony of these witnesses?

"Mr. Sellers: Well, your Honor, I am going to throw it out, if I can.

We do not agree that plaintiff's reasoning is valid as to the judge's belief. We concur with the trial court that it would be unjust "at this late date," or at any date, "to award damages on an invalid patent."

■ *"Point III.* The documentary evidence relative to the Alabama Street plant is hearsay, and was not properly admitted under 28 U.S.C. 1732(a)."

Title 28 U.S.C. § 1732(a) reads as follows:

"In any court of the United States and in any court established by Act of Congress, any writing or record, *whether in the form of an entry in a book or otherwise*, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, *if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act*, transaction, occurrence or event *or within a reasonable time thereafter.*

"All other circumstances of the making of such writing or record,

"The Court: All right.

"Mr. Sellers: In other words, there has been testimony given here, which was not noticed properly, and your Honor has tried to do equity in that connection by giving us additional time, for which we thank you.

"On the other hand, it was a fact that at the time of the trial we didn't have the opportunity to study the drawings that were produced and to examine these witnesses with that preparation. The witnesses are no longer here, and we are not asking that they be returned at this time, but we believe that under the governing rules of law this alleged prior use is not properly before this court, and that which is before the court does not carry conviction.

"It is our understanding that in addition to pursuing any additional evidence this afternoon, we would also have our final arguments. Am I right in that, your Honor?

"The Court: I will be glad to listen to you.

"Mr. Sellers: I think, then, that is where we should go from here." [Tr. 600, 601.]

including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this action, includes business, profession, occupation, and calling of every kind." [Emphasis added.]

Counsel for plaintiff, at the trial, objected that because the drawings and shop orders taken from Bodinson Company's files were old when offered, it was necessary to produce *some one working at the business when the documents were made,* to identify them, and testify that they were then made "in the regular course of business." [Tr. 551.]

Such a rule would exclude all business records made prior to the employment of present employees, unless they were found admissible under the ancient document exception. We know of no such intermediate area of non-admissibility. Korte v. New York, H. H. & H. R. Co., 2 Cir., 191 F.2d 86.

There was sufficient foundation laid in this case for the admission of these documents. Even if we suppose that the drawings were made *before* their use in the construction of the plant, they fall within the general language, "made in the regular course of business;" it being "the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event." Words such as "transaction" and "event" do not limit the simultaneity to any certain narrow period of hours, or even days. Kamm v. Rees, 9 Cir., 177 F. 14, 23; 17 Cyc. 384.

The court having correctly permitted the written drawings and job orders in evidence, and not having abused its discretion with respect to the waiver of the thirty day statutory notice of prior use, we find that the evidence amply supports the findings of a prior public use of the claimed invention, which invalidates both claims 1 and 5 of the Johnson Patent No. 2,138,172, as the trial court found.

The judgment is affirmed.