**TRANS–WORLD MANUFACTURING CORP., Appellee/Cross-Appellant,**

v.

**AL NYMAN & SONS, INC., and Al-Site Corporation, Appellants/Cross-Appellees.**

**Appeal Nos. 84–503, 84–772.**

United States Court of Appeals, Federal Circuit.

Dec. 20, 1984.

See also 95 F.R.D. 95.

Peter T. Cobrin, Stempler & Cobrin, New York City, argued for appellants.

William L. Mentlik, Lerner, David, Lettenberg, Kumholz & Mentlik, Westfield, N.J., argued for appellee. With him on the brief were Roy H. Wepner, Westfield, N.J.

Harold Pezzner, Connolly, Bove, Lodge & Hutz, Wilmington, Del., of counsel.

Before FRIEDMAN, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

FRIEDMAN, Circuit Judge.

These are cross-appeals from a judgment of the United States District Court for the District of Delaware, entered after a jury trial in a suit alleging, in part, infringement of two design patents covering display cases for eyeglasses. On cross-motions for judgment notwithstanding the verdict (NOV), the district court held that one patent was valid and infringed, enjoined further infringement of the patent, and granted a new trial on the issue of damages for that infringement. The district court dismissed the portion of the complaint alleging infringement of the other patent, on the ground that the invention there disclosed would have been obvious and had been obtained through inequitable conduct before the Patent Office. 219 USPQ 1059 (1983). We affirm the judgment except for one provision, on which we remand for modification.

I

A. *Background.*

Al Nyman & Sons, Inc., and its subsidiary Al-Site Corporation (collectively "Nyman"), import and distribute nonprescription eyeglasses, which are sold over the counter through five-and-ten-cent and discount stores. To facilitate sales, Nyman furnishes the selling stores, without charge, point-of-purchase display racks that hold the eyeglasses and from which they are sold. Nyman retains ownership of the racks.

Trans-World Manufacturing Corporation ("Trans-World") designs, manufactures, and sells point-of-purchase displays.

In 1978, Nyman asked Trans-World to design new display racks for it. The initial sketches that Trans-World made were unsatisfactory to Nyman, and Trans-World undertook to prepare additional ones. Trans-World developed two designs for display racks that were acceptable to Nyman. One of these designs was for a horizontal display rack and the other for a vertical chevron-shaped rack. These designs were embodied in the two patents here at issue: U.S. Design Patent No. 257,497 ('497 patent), covering the horizontal rack, and U.S. Design Patent No. 258,099 ('099 patent), covering the vertical rack. The listed inventors on both patents were Franklin and Dewees.

In October 1978, Nyman requested Trans-World to prepare models of both the horizontal and vertical displays. Trans-World delivered the models to Nyman in December 1978, and in January 1979, submitted to Nyman proposed prices for producing both displays. Nyman found the prices too high and arranged for other companies to manufacture the displays that Trans-World had developed.

On March 12, 1979, Trans-World filed two design patent applications directed to the two types of displays. The patents issued in November 1980 and February 1981, respectively. Each claimed "The ornamental design for an eyeglass holder substantially as shown and described." The designs in the two patents are reproduced below.

The '497 patent:

The '099 patent:

In the horizontal rack ('497 patent), the eyeglasses are displayed in back-to-front rows, each individual eyeglass position having a rounded or scalloped bottom surface to hold the lens portion of each eyeglass frame. In the vertical rack ('099 patent), there are vertical rows of cavities in which individual eyeglasses are placed. The cavities in each of the four rows are inclined downwardly toward the center of the rack in a chevron configuration.

## B. *The Litigation.*

In October 1981, Trans-World filed the present suit against Nyman. It alleged that Nyman had infringed both patents,

had breached an express or implied contract not to allow others to manufacture the display racks Trans-World had designed, and had failed to pay for the models Trans-World had supplied. Trans-World sought damages and an injunction. Nyman's response was that both patents were invalid because the designs would have been obvious, that the '497 patent also was invalid because it was obtained through fraud on the Patent Office, and that the '099 patent also was invalid because the application was not filed by all the inventors.

Following a jury trial at which evidence was introduced on all issues, including

damages, the jury returned answers to special interrogatories in which it found: (1) that the design of the '497 patent was not novel and was obvious; (2) that Trans-World intended to deceive the Patent and Trademark Office, or was grossly negligent, when it failed to disclose certain prior art during prosecution of the '497 application, and that this nondisclosure made it impossible for the patent examiner fairly to assess the application; and (3) that the design of the '099 patent was novel and unobvious, but that the patent was invalid because Morton Nyman and/or Arthur Marx (Nyman's advertising representative) were coinventors of the vertical display, and Trans-World deceptively intended not to disclose their coinventorship to the Patent and Trademark Office. Since the jury found both patents invalid, it did not reach the issues of infringement and damages.

(Although the interrogatories asked the jury to find whether each of the patents "was obvious," we interpret the inquiry as a shorthand phrase for the statutory standard (35 U.S.C. § 103) whether the design claimed in the patent "would have been obvious." We shall use the statutory phrase in referring to the jury's determinations.)

Each party then moved for judgment notwithstanding the verdict (NOV) or for a new trial on those portions of the jury's verdict adverse to it, except that Nyman did not contest the jury's finding that the design of the '099 patent was novel. Trans-World also moved under Federal Rule of Civil Procedure 15(b) to amend its complaint to include the claim that Nyman had been unjustly enriched through the transaction at issue.

The court dealt with these motions in a lengthy opinion. The court denied the motion for judgment NOV or for a new trial with respect to the '497 patent. The court granted the motion for judgment NOV with respect to the jury's finding that Mr. Nyman and/or Mr. Marx were coinventors of the design of the '099 patent, but denied all other motions with respect to the validity of that patent. It also denied Trans-World's motion to amend the complaint.

The details of these rulings are discussed later in this opinion.

The court thus upheld the jury's determination that the '497 patent was invalid, but overturned the determination that the '099 patent was invalid. The court further found that Nyman had infringed the '099 patent.

The court entered a judgment, final except for an accounting, that the '497 patent was "invalid, void and unenforceable," and that the '099 patent was valid and infringed. The court "permanently enjoined [Nyman] from making or selling eyeglass displays that come within the scope of [the '099 patent]," but did not enjoin use. It ordered a new trial to determine the damages from infringement of the '099 patent, but postponed such trial pending this appeal.

## II. *Validity of the '497 Patent*

A. In its answer to interrogatory 2, rendered pursuant to instructions that Trans-World does not challenge, the jury concluded that the design of the '497 patent would have been obvious. (The jury also found that the design was not novel, but since Nyman did not attempt to support that finding, the court, without deciding the point, assumed that the finding was incorrect. 219 USPQ at 1065, n. 16. The parties have not discussed the finding of novelty, and apparently they do not deem the question still in the case. We therefore do not consider the issue.)

In denying judgment NOV on the obviousness issue, the district court "[a]fter a careful review of the record" concluded that the underlying jury findings upon which this conclusion rested were supported by substantial evidence and that those findings supported the jury's determination of obviousness. 219 USPQ at 1065. The jury findings thus upheld included both the jury's answers to more detailed interrogatories and the other findings necessary to support the conclusion of obviousness that were implicit in that conclusion and which the jury therefore was presumed to have made. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d

1506, 1516, 220 USPQ 929, 936 (Fed.Cir. 1984).

We agree with the district court's conclusion on both the sufficiency of the evidence and the correctness of the legal determination of obviousness.

Trans-World challenges the determination of obviousness on two grounds: (1) Nyman did not establish that a particular item upon which the jury relied—the so-called Pennsylvania Optical display, which was not before the Patent Office when it issued the patent—was prior art; and (2) the evidence did not support the jury's determination that, in light of the prior art, the design in the '497 patent would have been obvious to an industrial designer of ordinary skill.

(1) The Pennsylvania Optical display was a rack the Pennsylvania Optical Corporation sold in the United States. In its opinion denying judgment NOV, the district court noted that "James Kruska, a former employee of the Pennsylvania Optical Company, testified that from 1972 through 1975, literally thousands of the Pennsylvania Optical displays were sold in the United States. Kruska further presented photographs of these displays which were in his possession since 1975." 219 USPQ at 1065–66 (record citations omitted). The court concluded that, "[a]ccepting Kruska's testimony, the jury properly found that the Pennsylvania Optical display[s] constituted prior art." 219 USPQ at 1066.

We have no reason to reject that conclusion. It rested upon the jury's crediting of Kruska's testimony and the corroboration of the photographs of the display which, although undated, were in Kruska's possession since long before Trans-World's design of the horizontal display tray was made in 1978. The conclusion thus is supported by both oral and documentary evidence. *See General Radio Co. v. Superior Electric Co.*, 321 F.2d 857, 863, 138 USPQ 595, 600 (3d Cir.1963).

Trans-World argues, however, that the district court erroneously charged the jury that Nyman was required to prove the existence of prior art only by clear and convincing evidence. It contends that under *Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed Wire Co.*, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1892), the prior use of a device by others was required to be proved beyond a reasonable doubt.

Although the Supreme Court there stated that proof of "unpatented devices, claimed to be anticipations of [the patented device] ... shall be clear, satisfactory and beyond a reasonable doubt" (143 U.S. at 284, 12 S.Ct. at 447), more recent decisions have not required that standard of proof. The Supreme Court apparently has retreated from that standard. *See, e.g., Radio Corporation of America v. Radio Engineering Laboratories*, 293 U.S. 1, 55 S.Ct. 928, 78 L.Ed. 1453, 21 USPQ 353 (1934); *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 60, 43 S.Ct. 322, 327, 67 L.Ed. 523 (1923) ("[E]vidence to prove prior discovery must be clear and satisfactory."). *See also* 1 Chisum, *Patents* § 3.05[2][c] (1983).

One of our predecessor courts stated that "[p]roof of [prior use of the patented invention by others] must be clear and convincing to overcome the presumption of validity." *Stevenson v. International Trade Commission*, 612 F.2d 546, 550, 67 CCPA 109, 204 USPQ 276, 280 (1979). Similarly, we have held that a patent may be invalidated "by clear and convincing evidence or its equivalent, by whatever form of words it may be expressed." *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir.1984). The rule that we apply—that prior use of a device by others must be proved by clear and convincing evidence—is one that a majority of the regional circuits that have considered the question also have applied. *E.g., E.I. DuPont de Nemours & Co. v. Berkley & Co.*, 620 F.2d 1247, 205 USPQ 1 (8th Cir.1980); *Paeco, Inc. v. Applied Moldings, Inc.*, 562 F.2d 870, 194 USPQ 353 (3d Cir.1977); *Julian v. Drying Systems Co.*, 346 F.2d 336, 145 USPQ 631 (7th Cir.1965); *Anderson Co. v. Trico Products Corp.*, 267 F.2d 700, 122 USPQ 52 (2d Cir.1959) ("clear and satisfactory"); *National Latex Products Co. v. Sun Rubber Co.*, 274 F.2d 224, 124 USPQ

84 (6th Cir.1959). *Contra: Penn International Industries, Inc. v. New World Manufacturing, Inc.*, 691 F.2d 1297, 216 USPQ 293 (9th Cir.1982); *Kiva Corp. v. Baker Oil Tools, Inc.*, 412 F.2d 546, 163 USPQ 5 (5th Cir.1969) (corroborated oral testimony held sufficient to prove prior use).

■ The district court properly applied this standard in its charge. It instructed the jury that "the Defendant, Nyman, has the burden of coming forth with clear and convincing evidence that the patents were improperly granted." Later in the charge it reiterated that

> [i]n order to find that the patents are invalid, ... the Defendants must have demonstrated to you by clear and convincing evidence that the Patent Office [sic] acted erroneously, based upon the entire prior state of the art, in finding that the designs were both novel and nonobvious.

The court also told the jury that

> [t]he phrase "clear and convincing" means that evidence which produces in your mind a firm belief or conviction as to the matter sought to be established.

(2) In upholding the jury determination that the design would have been obvious, the district court noted that the jury verdict incorporated both the underlying factual determinations and the legal conclusion of obviousness. The court stated it "must presume that the jury resolved the [factual] issues favorably for the Defendants," thereby concluding "that there is little difference between the patented design and the Pennsylvania Optical display[s], and that the ordinary level of an industrial arts designer is relatively high." 219 USPQ at 1066. The court found there was substantial evidence to support a jury finding that "the only innovation in the '497 patent was the scalloped shape of the molded plastic that holds the glasses in place," and that "[t]his scalloping ... is suggested in the Caldwell[ ] patent for an eyeglass display." "[T]he court readily concludes," it wrote, "that the defendants have clearly and convincingly demonstrated the obviousness of the [design of the] '497 patent." *Id.*

On appeal, Trans-World does not address the substance of the two prior art displays relied on by the district court. Instead, it points out that Nyman copied Trnas-World's display and obtained a patent on the copied display (which it later disclaimed) and made laudatory statements about the infringing design in advertising materials. These secondary considerations, Trans-World contends, establish that the display of the '497 patent would have been nonobvious.

A general verdict of obviousness will not be overturned unless "the underlying facts found by the jury (as implied from its return of a general verdict) are either themselves not supported by substantial evidence or, if so supported, cannot in turn support the jury's legal conclusion." *Stucki*, 727 F.2d at 1513, 220 USPQ at 936. "If, however, there was substantial evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party, then the denial of the JNOV [will be upheld as] correct." *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed.Cir.1984).

A comparison of the design of the '497 patent with the photographs of the Pennsylvania Optical displays provides substantial evidence for the district court's observation that "there is little difference in design between the [two]." On cross-examination, Mr. Franklin, who along with Mr. Dewees was a coinventor of the design of the '497 patent, testified:

> Q: Is the only thing that you consider to be creative on your part or Mr. Dewees' part to be the scalloping shown in figure 5 of [the '497 patent]?
>
> A: The exact shape, that scalloped shape, is the key to that patent, yes.

Mr. Dewees testified on cross-examination:

> Q: What do you consider to be the aesthetic aspect of [the display of the '497 patent], if any?
>
> A: The way we went about holding the eyeglasses in the display.

Q: You mean the scalloping in figure 5?

A: The scalloping, sculpturing of it, yes.

Q: Is that the only thing you consider to be aesthetic in [the '497 patent] as distinguished from purely functional?

A: In [the '497 patent], yes. That is our main focus.

There is substantial evidence to support the presumed jury finding that the scalloped portion of the display shown in the '497 patent is the only significant difference between that design and the Pennsylvania Optical displays.

Another prior art reference before the jury was the Caldwell patent for an eyeglass display, which the Patent Office also did not consider. The jury was warranted in finding that Caldwell suggested the scalloping in the '497 patent design. Figure 1 of Caldwell shows contours similar to those of the design of the '497 patent. Nyman's expert witness testified that the Caldwell display supports eyeglasses on a central ridge and "permits the frames to drop off on either side in a hollowed-out area, which is sculpted in for them."

The display disclosed in the Caldwell patent and the Pennsylvania Optical displays are in the same field of art. The similarities in the frame supports of the two would have suggested to an ordinarily skilled display designer that the contours of the Caldwell display could be easily substituted for the supporting contours of the Pennsylvania Optical displays, and in our opinion the jury had ample evidence on which to conclude that such a substitution would have been obvious.

With respect to the secondary considerations, the court, after instructing the jury on the three primary factors under *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), further told the jury:

Secondary consideration [sic], such as the commercial success or lack thereof of the patented device, may also be considered by you. Inquiry into these secondary considerations is relevant to the issue of obviousness, but not determina-

tive thereof apart from the three basic factual inquiries mentioned above.

■ Since Trans-World did not object to this instruction, although it objected to others, it cannot here complain about it. Rule 51, Federal Rules of Civil Procedure.

The court thus properly left it to the jury, in deciding obviousness, to determine what weight to give to the evidence of secondary considerations. We cannot say that that evidence, taken in conjunction with the evidence relating to prior art, required a conclusion of nonobviousness.

■ In view of our conclusion that the district court justifiably upheld the jury determination that the '497 patent is invalid for obviousness, we find it unnecessary to consider the alternative ground upon which the jury and the district court invalidated the patent: that Trans-World intended to deceive the Patent and Trademark Office or was grossly negligent when it failed to disclose the Pennsylvania Optical display to that Office during the prosecution of the '497 application.

■ B. Section 282 of Title 35 provides that, in actions involving the validity or infringement of a patent, the party asserting invalidity or infringement shall give the adverse party written notice at least 30 days before trial of any patent or publication to be relied upon, and that without such notice, "proof of the said matters may not be made at the trial except on such terms as the court requires." With respect to two items that Nyman introduced into evidence and upon which it relied to support the claim that the '497 and '099 patents were invalid—another patent and certain sketches made by Mr. Nyman—Nyman gave Trans-World only 23 days' notice. The district court waived the 30-day requirement for these two items.

Trans-World contends that the failure of Nyman to give it 30 days' notice on these two items violated the statute and requires reversal of the holding that the '497 patent is invalid.

The 30-day-notice requirement is not absolute but may be waived upon "such

terms as the court requires." The decision whether to waive the requirement, and upon what terms, is within the discretion of the district court, and that court's waiver in a particular case will not be reversed upon appeal except for an abuse of discretion. *Fairchild v. Poe*, 259 F.2d 329, 333, 119 USPQ 8, 10 (5th Cir.1958); *C.S. Johnson Co. v. Stromberg*, 242 F.2d 793, 797, 113 USPQ 105, 109 (9th Cir.1957).

Trans-World has not shown that the district court abused its discretion in permitting Nyman to introduce the two items despite giving only 23 days' notice. It has not demonstrated or even asserted any specific prejudice it suffered because of the shorter notice. It does not claim that the shorter notice prevented or hindered it from adequately presenting its case. Indeed, it did not even seek an extension of the trial date to give it additional time to prepare its response to those items. Although Trans-World argues that Nyman relied heavily on those two items and thus required it to meet that evidence, its burden in doing so was a consequence of the evidence itself and not the short delay in giving notice.

Trans-World points out that the district court did not state its reasons for waiving the time limit. There is nothing in the statute, however, that requires a court to do so. On appeal, Trans-World has the burden of showing that the district court abused its discretion in granting the waiver. Trans-World has not made that showing.

### III. *Validity of the '099 Patent*

The jury found (interrogatories 10 and 11) that the design of the '099 patent was novel and not obvious. It further found, however, that Arthur Marx and Mr. Nyman were coinventors of that design and that Trans-World deceptively intended not to disclose that coinventorship in its application to the Patent Office (interrogatories 12 and 13). It also gave a negative answer to the question whether the '099 patent "is valid and was infringed by the defendant." The conclusion of invalidity reflected the bar in 35 U.S.C. § 102(f) against the issue of a patent to an applicant who "did not

himself invent the subject matter sought to be patented" and the requirement in 35 U.S.C. § 111 that an application for a patent must be "made ... by the inventor." 1 Chisum, *Patents* § 2.03.

The district court granted Trans-World's motion for judgment NOV on the jury's determination of invalidity. The court ruled that "there is no evidence to support the jury's conclusion that Nyman and/or Marx were co-inventors of the '099 patent." The court further ruled that because the jury found the patent invalid, it properly answered interrogatory 14 negatively; that it could not be determined whether, if the jury had found the patent valid, it would have found it infringed; and that based upon the court's review of the evidence, Nyman infringed the '099 patent as a matter of law. Nyman does not here challenge that determination of infringement.

A. The facts upon which the district court based its conclusion that Nyman was not a coinventor of the '099 patent are as follows:

Following Nyman's rejection of Trans-World's original sketches in June 1978, Trans-World developed new sketches that formed the basis for the design in the '099 patent. A Trans-World officer testified that those sketches were shown to Nyman before September 1978. One of those sketches was PX–44, which the district court stated "essentially embodies the chevron design found in the '099 patent" and which the Trans-World artist who made the sketch testified "was completed in the late spring or early summer of 1978." 219 USPQ at 1068.

Three Trans-World employees testified that Crum, a New York commercial artist, made a more detailed drawing of the sketch, known as a "tight rendering," which is PX–49. An invoice from Crum for this tight rendering was dated July 12, 1978. Two of the three Trans-World employees testified that this tight rendering was made before the latter date.

The district court concluded

based upon the date of the Crum invoice and the unrebutted testimony of Trans-

World personnel, that PX–49 existed as of July 12, 1978. Further, giving all reasonable inferences to the defendants, the Court finds that PX–49 embodies the design found in the '099 patent. *A fortiori,* the chevron design found in the '099 patent was created no later than July 12, 1978.

*Id.*

The district court noted that Nyman's claim that Mr. Nyman was the coinventor of the design of the '099 patent (it apparently has abandoned its claim that Marx also was a coinventor), "rested exclusively on the testimony of Morton Nyman." According to Mr. Nyman, when a Trans-World officer, Mr. Cavaluzzi, visited him at Nyman's place of business in Florida in September 1978, Nyman showed him two sketches (DX–89 and 89–A) Nyman had made. The district court stated that those sketches "include a rudimentary of a design that is similar to a chevron design." *Id.* Mr. Nyman said he derived his sketch from a candy display.

Mr. Nyman testified that his sketches were "of what a vertical display—not should look like—but should hold" and that "this has nothing to do with the cosmetic element." He described as "correct" counsel's statement on cross-examination that the sketches "had nothing to do with cosmetics but just showing him functionally what you wanted this design to do."

On the basis of its review of the evidence, the district court gave the following explanation of why the jury's determination of invalidity could not stand:

The Court finds that because Nyman's claim to co-inventorship is based upon the sketch found in DX–89 and 89–A, the jury could not reasonably have concluded that Morton Nyman contributed to the design found in the '099 patent. The Nyman sketch was not drawn until at least two months after the chevron design found in the '099 patent was completed. Further, Morton Nyman testified that the sketch found in DX–89 and 89–A was not a design, but was merely intended to demonstrate to Trans-World Nyman's functional requirements for ey-

eglass displays. As such, the jury's conclusion that Nyman and/or Marx were co-inventors of the '099 patent is not substantiated by the record. Therefore, the jury's conclusion that the '099 patent was invalid because of co-inventorship must be reversed.

*Id.* at 1069 (footnote omitted).

Nyman argues that because there was a conflict in the testimony, the district court, in granting judgment NOV, improperly invaded the province of the jury as the trier of the facts when it rejected the jury's determination that Mr. Nyman coinvented the design in the '099 patent. The only conflict, however, was over whether Trans-World had shown Nyman its sketches. before Mr. Cavaluzzi's September 1978 visits to Florida. That conflict related to an issue that was not material to the determination of invention. The question is not whether Nyman knew of the Trans-World design prior to September, but whether that design was perfected before Mr. Nyman showed Trans-World his sketches.

We have no basis for rejecting the district court's determination that Trans-World had completed and perfected its design approximately two months before Mr. Nyman showed Mr. Cavaluzzi his sketches. Indeed, even disregarding all the evidence upon which the district court relied in holding that Mr. Nyman was not a coinventor, Nyman still would not have carried its burden of overcoming the presumption of validity of the '099 patent. Nyman's evidence regarding Mr. Nyman's sketches did not establish that, prior to Trans-World's perfection of its design, Mr. Nyman had produced any design upon which Trans-World had relied. Moreover, Nyman's own testimony indicated that his sketches reflected not the design of the rack but the functions Nyman wanted the rack to perform.

■ B. In denying Nyman's motion for judgment NOV on the jury's determination that the design in the '099 patent would not have been obvious, the district court acted upon its "independent review" of the file wrapper and the two patents there cited upon which Nyman relied, U.S. Patent No.

3,357,568 to LeBlanc and U.S. Design Patent No. 239,806 to Bressickello. *Id.* at 1068. It noted the testimony of Nyman's expert, Kidd, that "the '099 patent design would have been fairly obvious to an industrial arts designer exercising ordinary skill in light of the LeBlanc and Bressickello patents." It concluded, however, that "Kidd's testimony concerning obviousness in light of the LeBlanc and Bressickello patents does not clearly and convincingly overcome the presumption of validity surrounding the '099 patent. Consequently, the Court holds as a matter of law that the '099 patent was non-obvious." *Id.*

We concur in that conclusion.

The displays shown in the Bressickello and LeBlanc patents, while directed to vertical, chevron arrangements, are different from the display of the '099 patent. Neither Bressickello nor LeBlanc has all the features of that display, and several features are not shown at all. We do not agree with Nyman that the differences were so trivial as to have rendered the design in the '099 patent obvious. The jury was not required to accept the contrary conclusion of Nyman's expert, Kidd.

Moreover, the examiner considered both of the patents in issuing the '099 patent. Just as the examiner's failure to consider the most relevant prior art makes it easier to overcome the presumption of validity, "[w]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due [that] government agency." *American Hoist,* 725 F.2d at 1359, 220 USPQ at 770.

In these circumstances, it is immaterial that in reviewing the evidence on obviousness the district court did not discuss the three factual inquiries required by *John Deere.* To obtain a reversal of the jury's determination that the '099 patent would not have been obvious, Nyman must "show that the jury's factual findings were not supported by substantial evidence, or if they were, that the jury's legal conclusion was not supported by those facts." *Stucki,* 727 F.2d at 1512, 220 USPQ at 936;

*Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 221 USPQ 473 (Fed.Cir.1984). Nyman has not made that showing.

### IV. *The Injunction*

The district court's Final Judgment Except for Accounting provided that "Defendants are permanently enjoined from making or selling eyeglass displays that come within the scope of U.S.L.P. No. 258,099." Although the proposed judgments of both Trans-World and Nyman also included a prohibition against Nyman's use of the infringed design, the district court, without explanation, did not include that ban. Trans-World challenges the district court's failure to grant that relief.

Since Nyman neither makes nor sells the infringing display racks, the district court's injunction gives Trans-World no meaningful relief. Section 283 of Title 35, U.S.C., authorizes district courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Although a district court has discretion whether to enter an injunction, *Roche Products, Inc. v. Bolar Pharmaceutical Co., Inc.,* 733 F.2d 858, 221 USPQ 937 (Fed.Cir.1984), the exercise of this discretion cannot be arbitrary. A patent gives "the right to exclude others from making, using or selling the invention." 35 U.S.C. § 154 (1982).

In the circumstances of this case, the district court might have decided not to grant any injunctive relief. Once the court determined to provide such relief, however, it could not properly deny the one element of such relief that was necessary to make it effective.

Nyman argues that since only its customers use the eyeglass racks, an injunction against Nyman's use was unnecessary and would be a meaningless act. Nyman, however, is using the racks by furnishing them to its customers to aid the latter in selling eyeglasses. The district court may frame an effective injunction against Nyman's "use" of the patented display by specifying that such use includes the furnishing of the racks to the customers, and

that to terminate such use Nyman must recall the racks from its customers. Trans-World is entitled to a modification of the injunction to bar Nyman's use of the infringing display racks.

This conclusion is not inconsistent with our decision in *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 219 USPQ 377 (Fed.Cir. 1983). There we held that in assessing damages for patent infringement in the particular circumstances, the district court should have based its determination of a reasonable royalty on a flat license fee for the use during the life of the patent of each infringing machine rather than (as it did) on a percentage of the selling price of the infringer's product made on the infringing machine. We then concluded that the injunction the district court entered should be modified to eliminate the prohibition against the infringer's use of the machine. We gave the following reason for that conclusion: "Upon receiving full compensation for the making and using of existing infringing fryers, appellees are not thereafter entitled to enjoin use of such fryers." 716 F.2d at 1563, 219 USPQ at 386.

In the present case, in contrast, there is no way of knowing on what basis the jury will determine damages. We cannot foretell whether the damage award will be based upon a reasonable royalty or some other basis, or if based upon a royalty whether it will be a flat amount or reflect the actual use of the display racks. Ordinarily an injunction is designed to prevent future infringement, and damages are awarded as compensation for past infringement. Where the damage award is based upon an assumed license for the life of the patent, there is no need to enjoin use, since the license fee authorizes use. The propriety of an injunction against use, however, arises only if the damages are based upon a flat amount giving the licensee the right to use the patent for its life. Since we do not now know the basis upon which the jury will determine damages, an injunction against use is necessary. If the jury should award damages based upon a flat fee for use of the patent, the district court then may modify the injunction to eliminate the prohibition against use.

## V. *The Motion to Amend the Complaint*

Following the jury verdict, Trans-World filed a motion pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the complaint to conform to the evidence. Trans-World sought to add another cause of action "for quantum meruit," "contract implied in law," "quasi-contract," and "unjust enrichment." The theory of this additional cause of action was that, by submitting its designs to Nyman, Trans-World had conferred a valuable benefit upon Nyman for which it reasonably expected to be compensated by orders for the displays; that there was a contract implied in law by which Nyman was obligated so to compensate Trans-World; and that Nyman was "unjustly enriched by obtaining valuable designs at no cost or expense, which designs have been utilized by defendants to their advantage and profit in selling non-prescription eyeglasses."

Trans-World stated that "each and every element of its proposed additional claim was in fact tried by the express and implied consent of all the parties." It further asserted that "[s]ince the proposed supplemental claim is strictly equitable in nature, ... it can be decided directly by the Court."

In denying the motion, the district court stated:

It [rule 15(b)] does not allow an unsuccessful litigant to add a new theory of recovery after trial on an issue not submitted to the jury....

The plaintiff's "quasi-contract" theory was not included in the jury instructions, nor was it submitted to the jury in any other fashion. In essence, the plaintiff wishes the Court to sift through the record and find that the jury could have returned a verdict on its new theory. This is not permitted.

219 USPQ at 1073–74 (footnote omitted).

On appeal, Trans-World argues that the issue of unjust enrichment was tried with the express or implied consent of Nyman. Trans-World points to the pretrial order, which it describes as "replete with refer-

ences to this theory of recovery," and to the jury instructions it proposed before trial, which contained a charge on "contracts implied in law." It contends that because the issue actually was litigated, the district court erred in denying the motion to amend the complaint.

We construe the district court's language in denying the motion as including the determination that the issue of unjust enrichment was not tried by either the express or implied consent of Nyman. That determination is within the discretion of the trial court, and will not be overturned except for abuse of discretion. 6 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 1493 at 469 (1972), and cases cited therein.

Trans-World has not established that the district court abused its discretion in denying the motion to amend. Apart from showing that before trial it asserted the claim, Trans-World has not shown the extent to which the facts bearing on unjust enrichment were actually addressed by the parties, or whether they were litigated at all. Trans-World did not object to the district court's failure to charge the jury on unjust enrichment.

Nyman has asserted on appeal that, had it been aware that Trans-World was asserting the unjust enrichment claim, it would have presented additional evidence on the point. Under these circumstances, we cannot say whether Nyman "would be prejudiced by the implied amendment, i.e., whether [it] had a fair opportunity to defend and whether [it] could offer any additional evidence if the case were to be retried on a different theory." *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir.1969). The district court did not abuse its discretion in denying the motion to amend the complaint.

## VI. *Damages*

A. During the trial, the district court refused to admit evidence of Nyman's profits on the sale of eyeglasses sold from the infringing display racks. Trans-World sought to introduce that evidence on two theories: (1) that it could directly recover those profits under 35 U.S.C. § 289, a statute dealing with damages for infringement of design patents, or (2) that the jury could consider those profits in determining a reasonable royalty under 35 U.S.C. § 284.

■ Trans-World raises both of those issues in its appeal. Nyman's first response is that we should not consider those issues, on the ground that since the jury did not reach the question of damages because it concluded that both patents were invalid, Trans-World is seeking an advisory opinion on an issue that neither the jury nor the district court decided.

Those issues, however, undoubtedly will arise on the retrial of the question of damages that will be held. Trans-World is likely again to seek to introduce that evidence. There is a present dispute between the parties over the admissibility of the evidence. The answer to that question depends solely upon the resolution of legal issues, since the facts relating to them are not in dispute. If we say nothing about the issues, the district court is likely to adhere to its prior rulings at the retrial. In that event, if on a second appeal we were to hold that either of the rulings was erroneous, the parties would be required to undergo still a third trial on the damages question.

Considering all the circumstances, we conclude that it is appropriate for us to set forth our views on those questions at this time. *Cf. Baumstimler v. Rankin*, 677 F.2d 1061, 215 USPQ 575 (5th Cir.1982); *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 439 F.2d 1369, 165 USPQ 355 (5th Cir.1970).

■ 1. Section 289 provides that [w]hoever ... (1) applies [a] patented design ... to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design ... has been applied, shall be liable to the owner to the extent of his total profit ....

Trans-World argues that "since it was obviously Nyman's desire and intent to use the displays to make sales," and since the patented displays actually were used to aid

those sales, Nyman therefore "applied" the patented design to the eyeglasses. Consequently, Trans-World argues it may recover Nyman's profits from the sale of the displayed eyeglasses under section 289.

The language of section 289, however, does not carry the meaning that Trans-World ascribes to it. Reading the two subparts of that section together, as one must, they cover only the application of a patented design to the article that is sold and not an article sold with aid of a display rack embodying the patented design. The application of a patented design to another article of manufacture "for the purpose of sale" refers to the sale of the other article. Similarly, the second subpart covers only the sale of an article to which the patented design has been applied.

In the present case, the patented design has not been applied to the articles that Nyman sells—the eyeglasses—but only to the display racks that Nyman furnishes to its customers to use in selling the eyeglasses. Nyman does not sell the display cases that infringed the design patent; it supplies them without charge to its customers and retains ownership of them while in the customer's possession.

Section 289 does not cover that use of the patented design by Nyman, since that use does not involve the application of the patented design to the glasses "for the purpose of sale" or the "sale" of an article of manufacture "to which such design ... has been applied." Section 289 would apply in a suit charging that the firms who manufactured the display racks for Nyman infringed the '009 patent. It does not apply, however, where the asserted design patent does not cover the article sold, as in this case.

The legislative history of section 289 confirms this interpretation. The provision originated in the Patent Act of 1887, ch. 105, 24 Stat. 387, which was passed in response to the Supreme Court's decision in *Dobson v. Dornan*, 118 U.S. 10, 6 S.Ct. 946, 30 L.Ed. 63 (1886).

*Dobson* was a suit for infringement of a patent for the design of a carpet. Although the design of the defendant's carpet was held to have infringed the plaintiff's patented design, the Supreme Court held that the plaintiff was entitled to recover only nominal damages because he had not proved what portion of the defendant's profits or the plaintiff's losses was attributable to the value of the design as distinct from the value of the carpet itself. *Dobson* thus held that in determining damages for the infringement of a design patent through its application to a manufactured article, an apportionment was required between the portion of the damages attributable to the infringement of the patent and those attributable to the value of the manufactured article, and that the patentee could recover only the former.

Congress viewed the practical effect of the *Dobson* decision as precluding any recovery for violation of a design patent. H.R.Rep. No. 1966, 49th Cong., 1st Sess., Vol. 7 (1887). It adopted a provision that made it unlawful for any person to "apply the design secured by" a patent "to any article of manufacture for the purpose of sale, or to sell or expose for sale any article of manufacture to which such design ... shall ... have been applied." The provision further made a violator thereof liable for $250 and

> in case the total profit made by him from the manufacture or sale, as aforesaid, of the article or articles to which the design, or colorable imitation thereof, has been applied, exceeds the sum of two hundred and fifty dollars, he shall be further liable for the excess of such profit over and above the sum of two hundred and fifty dollars ....

24 Stat. 387 (1887).

The House Report stated that the designs to which this provision applied "are defined as works of art applied to articles of manufacture intended for sale and use." H.R.Rep. No. 1966 at 1.

This legislative history shows that section 289 was intended to permit recovery of an infringer's profits only in cases where the infringement involved sale of a product embodying the patented design. Trans-World points to nothing in the language or

legislative history of the section that calls for a different conclusion. The two cases upon which it relies—*Fedtro, Inc. v. Kravex Mfg. Corp.*, 313 F.Supp. 990, 164 USPQ 510 (E.D.N.Y.1970) and *Malsed v. Marshall Field & Co.*, 96 F.Supp. 372, 88 USPQ 552 (W.D.Wash.1951)—dealt with copyrighted displays that were part of the items sold. To the extent these cases are relevant at all, they support rather than contradict our interpretation of the statute.

We conclude, therefore, that the district court correctly ruled that Trans-World cannot directly recover Nyman's profits from the sale of eyeglasses under section 289.

■■■ 2. A reasonable royalty is the amount that "a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article, in the market, at a reasonble profit." *The Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co.*, 95 F.2d 978, 984, 37 USPQ 479, 484 (6th Cir.1938). *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978). Among the factors to be considered in determining that amount is the infringer's anticipated profit from use of the patented invention, including "[t]he effect of [using] the patented specialty in promoting sales of other products of the licensee." *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*, 318 F.Supp. 1116, 1120, 166 USPQ 235, 238 (S.D.N.Y.1970) *mod.* 446 F.2d 295, 170 USPQ 369 (2d Cir.), *cert. denied*, 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114, 171 USPQ 322 (1971). 5 Chisum, *Patents* § 20.03[3][b][iv], [v]. *See Deere & Co. v. International Harvester Co.* 710 F.2d 1551, 218 USPQ 481 (Fed.Cir.1983). Evidence of the infringer's actual profits generally is admissible as probative of his anticipated profits. *Locklin v. Switzer Brothers, Inc.*, 235 F.Supp. 904, 906, 143 USPQ 233, 238 (N.D.Cal.1964); 5 Chisum, *Patents* § 20.03[3][b][iv].

■■■ By supplying the patented racks for displaying the eyeglasses, Nyman used "the patented [invention] in promoting sales of" the nonpatented eyeglasses.

Trans-World may be able to prove that Nyman's infringing use of the displays played an important part in the retail sales of Nyman's eyeglasses. Furthermore, the extent of the profits from such sales could be relevant in determining the amount of a reasonable royalty. If, for example, sales were increased because of the infringing use of the displays, that fact could affect the amount of royalties a potential licensee would be willing to pay.

We therefore disagree with the district court's exclusion of evidence of Nyman's profits from the sale of displayed eyeglasses as not relevant to the determination of a reasonable royalty. In so stating, we express no opinion concerning the weight, if any, to be given such evidence or any conditions that might properly be imposed upon its admission; we indicate only that we do not think the district court should have excluded it.

B. One further aspect of the damages issue warrants brief discussion. Section 284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer...." A reasonable royalty thus is not necessarily the measure of damages, but "is merely the floor below which damages shall not fall." *Bandag Inc. v. Gerrard Tire Co., Inc.*, 704 F.2d 1578, 1583, 217 USPQ 977, 981 (Fed. Cir.1983).

The district court declined to give a proposed Trans-World instruction that paralleled the language of section 284 and also stated that "[a]s an element of damages, Trans-World is entitled to collect the profits which it has lost as a result of the infringement if, in all reasonable probability, Trans-World would have made the infringing sales." Instead, the court charged:

The actual damage to the Plaintiff, if any, caused by infringement is most accurately determined on the basis of what the jury finds from a preponderance of the evidence in the case to be a reason-

able royalty which, in this case, is the same as a reasonable profit.

Trans-World contends that this instruction was erroneous because, among other things, the court improperly equated royalty with Trans-World lost profits. We view the instruction, however, as reflecting the district court's conclusion that on the facts of this case a reasonable royalty would be the most accurate indication of the damages Trans-World actually suffered from the infringement, a conclusion on which we express no opinion at this time. Thus viewing the instruction, we have no basis for determining that its charge to the jury constituted reversible error.

## CONCLUSION

The Final Judgment Except for Accounting of the district court is affirmed except that the case is remanded to the district court to modify paragraph 4(c) of that judgment to enjoin the defendant from using eyeglass displays that come within the scope of the '099 patent in accordance with this opinion.

AFFIRMED IN PART AND REMANDED FOR MODIFICATION.